## KELLY v. DELANEY.

(Supreme Court, Appellate Division, First Department. February 11, 1910.)

1. PARTNERSHIP (§ 95*)—TRANSACTION BETWEEN PARTNERS—SALE OF PARTNERSHIP INTEREST—FRAUD.

The relation between copartners being one of mutual trust, requiring the utmost good faith, one partner could purchase the interest of the other only upon fully disclosing all his knowledge as to the value of such interest, and his failure to inform the selling partner of the settlement of suits by and against the firm, which would materially increase the value of the interest sold, was a fraud upon the selling partner.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 142; Dec. Dig. § 95.*]

2. PARTNERSHIP (§ 102*)—DEALINGS BETWEEN PARTNERS—PURCHASE OF INTEREST—FRAUD—REMEDY.

If a contract between copartners assigning the partnership interest of one of them had been executed by delivery of the assignment and acceptance of the purchase price, when the assignee discovered that his assignor had fraudulently concealed facts affecting the value of the interest assigned, he could either sue in equity to rescind, offering to return the purchase price, or retain the price, and sue for damages.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 102.*]

3. FRAUD (§ 35*)—ACTION FOR DAMAGES—WAIVER OF ACTION.

While, where the contract has not been fully executed, one who discovers fraud in inducing its execution and thereafter acquiesces in full performance waives his claim for damages from the fraud, where a contract of sale of a partner's interest was fully executed by delivery of the assignment and receipt of the purchase money check, the defrauded party did not waive his right of action for damages by retaining the check on discovering the fraud a few minutes after the assignment was delivered and the check received.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 30; Dec. Dig. § 35.*]

4. APPEAL AND ERROR (§ 883*)—ESTOPPEL TO ALLEGE ERROR.

It is immaterial on appeal whether the measure of damages adopted below was correct, where counsel for both parties agreed that it was the correct measure of damages applicable to the facts.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 883.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Edward H. Kelly against John T. Delaney. From an order granting a new trial unless plaintiff remit part of his recovery, both parties appeal. Reversed and verdict reinstated.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

John Thomas Smith, for plaintiff.
Michael J. Sweeney, for defendant.

---

LAUGHLIN, J. This is an action to recover damages alleged to have been sustained by the plaintiff owing to false and fraudulent representations made by the defendant by which he was induced to sell and assign to the defendant for the sum of $3,000, his interest in a certain copartnership. On the 3d day of August, 1905, the plaintiff and the defendant and Patrick H. Whalen formed a copartnership for the purpose of continuing the law practice of the then late firm of Whalen & Dunn. The copartnership articles merely recited that this was the object of the parties, and that it was agreed that Whalen was "to be reimbursed for all sums expended in procuring said business, and the profits arising therefrom, after said sums are deducted and paid to Mr. Whalen, together with the profits on all future business, are to be divided equally between the parties hereto." While the parties were signing these brief copartnership articles, Whalen drew the attention of the plaintiff and defendant to two litigations which were then discussed by the parties. One was an action brought by Anthony McOwen against Whalen as surviving member of the firm of Whalen & Dunn to recover the sum of $19,000 or $19,500, which McOwen claimed was due and owing to him from the late firm for services in procuring business for the firm. The other was an action brought by Whalen against Lawrence E. French and George McCauslan and the Colonial Trust Company to restrain the individual defendants from holding themselves out as successors to or entitled to the business of the firm of Whalen & Dunn, or asserting any claim to certain fees alleged to be due and owing to the late firm from its clients, and payable out of awards made in condemnation proceedings; and to compel them to surrender certain retainers and papers belonging to the firm, and to account for moneys collected which belonged to the firm. Whalen thereupon said that he would furnish the necessary money to carry on the business, but that he would have to be reimbursed for the money he had spent, and that the new firm would have to assume these two litigations, and bear the expenses thereof, to which the plaintiff and the defendant assented. The new firm continued until the 19th day of October, 1907, when the plaintiff sold and assigned his interest to the defendant, but the plaintiff left the office, and virtually severed his connection with the firm, but without selling his interest or having an accounting, on the 15th day of March, 1907, on account of some friction between him and Whalen.

The plaintiff testified that in the month of August, 1907, at the instance of the defendant, an appointment was made between them, and, pursuant thereto, he called upon the defendant at the old office, and they discussed the question of the plaintiff's interest in the firm, evidently with a view to having him sell it to his fellow partners, and that the defendant spoke of the pendency of these two actions and of the bad effect their pendency had on the business of the firm, owing to the time and attention they required, and asked plaintiff what he thought he ought to receive for his interest, to which plaintiff answered that, in view of the pendency of these actions and the bad effect they were having on the business, he thought he ought to have $4,000 for his interest, whereupon defendant replied that with all his knowledge of the business, which he intimated was greater than the plain-

tiff's, owing to the fact that plaintiff was no longer there, he would be glad to get out for $3,000. Nothing came of these negotiations, and the parties evidently separated without an agreement to meet again. They next met by accident in the subway on the 9th day of October, 1907, and again discussed the question with respect to the plaintiff's interest in the firm. Plaintiff testified concerning this interview that defendant informed him that McOwen suit was then on trial before a referee and was occupying most of his time, and that McCauslan, one of the defendants in the other case, was a witness for McOwen, and was giving very damaging testimony; that McOwen was making out a very good case; that it looked very much as if he would succeed or as if it would go hard with the firm; that an attempt had been made to adjust it which was unsuccessful, owing to the attitude of the attorney for McOwen, who would not hear to it or make any proposition or listen to any, and that "it looked altogether very bad"; and that on this occasion the defendant again alluded to the fact that this litigation was a serious interruption and annoyance to the firm business. The parties met again at the plaintiff's office No. 156 Broadway on the 16th day of October, 1907, and the plaintiff testified that he asked the defendant whether he or Whalen was "giving any consideration to the adjustment of my affair or to acquiring my interest or anything of the kind," at which the defendant turned around, and said, "What will you take for your interest?" to which the plaintiff replied, in substance, that the defendant had said on a former occasion that he would take $3,000 for his interest, and "I will take $3,000 for mine"; that the defendant requested a week to consider it or to take it up with Mr. Whalen, and plaintiff acquiesced. At about 2:30 o'clock on the afternoon of the 19th day of October, 1907, the defendant, according to the testimony of the plaintiff, called at his office again and drew from his pocket an assignment of the plaintiff's interest in the firm to him, which he handed to the plaintiff, with the request that he read it. The plaintiff read it, and thereupon the defendant asked, "if I had any question to ask him," and the plaintiff suggested some change in the form of the assignment "to cover some business that I had already had, that I had taken with me to the office at 156 Broadway," which correction was made, and thereupon, at the plaintiff's request, the defendant executed an agreement to indemnify him against the debts of the firm, and the plaintiff executed the assignment, and the defendant delivered to him a certified check for $3,000. Prior to this time to the full knowledge of the plaintiff the action brought by Whalen against French and McCauslan had been tried in April, 1906, and decided in April or May, 1907, at Special Term in favor of the plaintiff therein, and the court had adjudicated that the defendants had no interest in the fees to which they made claim, and they had taken an appeal.

It appears that on the 11th day of October, 1907, both litigations were settled, the action brought by Whalen, by discontinuance of an appeal to the Appellate Division taken by the defendants, upon condition that certain business of the firm be turned over to them, and the other on the payment of $6,500. The fraud alleged and sought to be established by the plaintiff consisted in a concealment by the defendant from the plaintiff at the time of the transfer of his interest of the fact that these

two litigations had been settled. There is no evidence of any misrepresentation by the defendant with respect to these settlements, excepting that perhaps evidence given in behalf of plaintiff tends to show that there were negotiations pending for and with a prospect for a settlement at a time when the defendant led him to believe that such negotiations were permanently broken off, but there was no representation that the cases had not been settled or were pending after they had been settled, and defendant's statement that McOwen's attorney, stood in the way of a settlement was not disproved. The plaintiff brings this action upon the theory that the defendant as a partner owed him the duty of a full disclosure with respect to his knowledge concerning the settlements, and it may be conceded that such was his legal duty (Wright v. Duke, 91 Hun, 409, 36 N. Y. Supp. 853), and, if he failed to do so, constituted a fraud, upon discovering which the plaintiff would have been at liberty to elect to have disaffirmed the sale and return the consideration received and claim his full interest in the firm, or to have affirmed it and retained the proceeds, and to have brought this action for his damages provided the sale was fully consummated and the affirmance of the sale was not made under circumstances indicating a waiver of his right to recover damages. On his own theory of the case it was incumbent upon the plaintiff at least to show by a preponderance of the evidence that he was induced through the fraud of the defendant in making representations or in concealing material facts to execute the assignment of his interest in the firm, and to give evidence which would afford a basis for the award of substantial damages. We are of opinion that he failed to do so.

According to the testimony of the plaintiff, immediately after the execution and delivery of the papers and of the check, he invited the defendant, Mr. Darrow, a lawyer who officed with the plaintiff, and a Mr. Abercrombie, who were in the office at the time, to a nearby café for the purpose of treating them on account of the fact that he was delighted over the sale of his interest in the firm. It does not expressly appear, but the clear inference is, that the plaintiff had not cashed or parted with the possession of the check, and that nothing had been done by either party in reliance upon the transfer of the interest at this time. Plaintiff says that after they had been in the café five or ten minutes, and while they were standing at the bar, the defendant said to him in the presence and hearing of Mr. Darrow—plaintiff says that he knows that Darrow heard it, but does not know whether or not Abercrombie heard it, "Now, you have executed your assignment to me. You have settled this thing and you have fixed your price, haven't you?" to which the plaintiff replied, "We have arrived at a price," or something to that effect, whereupon the defendant said: "Now, I am going to tell you something that I did not tell you before. We have settled the McOwen case and the French and McCauslan case." On cross-examination the plaintiff said of the visit to the café and what occurred there, that he felt pretty good over the settlement, and did not feel that he was fooled in any way, that $3,000 amply satisfied him and he ordered a bottle of wine, and while they were standing in front of the bar the defendant said to him, "Now, we have settled this and

you have fixed your own price, haven't you?" to which the plaintiff replied, "Well, we have arrived at a price," or something to that effect, and the defendant said: "Now, I am going to tell you something that I did not tell you before. We have settled the French and Mc-Causlan case and also the McOwen case." The plaintiff was then asked, "Did he tell you the amounts?" to which he replied, "Yes; I think he did. He told me the amounts in regard to the McOwen case. The settlement of the French and McCauslan case involved a great many particulars some of which I think he mentioned, but I do not now remember all of them." The plaintiff was then asked, "What did you say in answer to Mr. Delaney"? to which he replied, "Well, I was very much surprised at what he told me, and I said to him, 'Is that so?' And I said, 'Well, that's a good thing.'"

The next time the parties met according to plaintiff was at his office a week later, when defendant called for some memoranda which plaintiff had prepared for the purpose of bringing an action to dissolve the firm, and asked to look at them or to take them, and his request was granted. Plaintiff testifies that he then said to the defendant: "Why didn't you tell me about the settlement? Why was it you didn't tell me about the settlement of these actions before you took my assignment?"—to which he says the defendant replied, "Well, I had some qualms about it, but I was in such a fix," or "such a position that I could not do everything the way I would like to do it." Neither Darrow nor Abercrombie was called as a witness. The failure to call Abercrombie in the circumstances perhaps is not significant, but the failure to call Darrow in view of his friendly relations with the plaintiff, which may be inferred from the fact that they officed together and of the further fact that the plaintiff assumed to know that he heard the conversation, throws doubt upon the plaintiff's testimony with respect to the conversation claimed to have taken place between him and the defendant in the café. The defendant testified that he informed the plaintiff on the 19th day of October, 1907, before the execution and exchange of the papers, that the two litigations had been settled, and he denies that he made the statement in the café attributed to him by the plaintiff. The plaintiff relies upon his own testimony to establish the fraud, and it is not only unsupported, where it might if true be supported, and contradicted by the defendant, but it is highly improbable. If the plaintiff considered that he had been fraudulently induced to assign his interest in the firm by the concealment of the fact that these two actions had been settled, it would be reasonable to expect some show of resentment on his part, instead of receiving the announcement calmly and with no apparent interest, as related by himself, and making no criticism of the conduct of the defendant, and making no complaint because he had not been sooner informed of these settlements. There is only one theory upon which his conduct is consistent with the fact that he did not know that the settlements had been made until after the execution and delivery of the papers, and that is that with the information that the cases were settled and the terms upon which they were settled, which he says were disclosed, or, at least, sufficiently disclosed to him in the café, he was still satisfied with his bargain and preferred to retain and use the check rather than to rescind the con-

tract, and did not then claim or consider that he had been deprived of any right or that he had any grievance, for which he intended to demand redress. It would require an accounting to determine precisely the value of the plaintiff's interest in the firm. That right, however, he forever parted with when he assigned his interest in the firm and after discovering the fraud, if fraud there was, affirmed the contract and retained the purchase price. Gould v. Cayuga County Nat. Bank et al., 99 N. Y. 333, 2 N. E. 16.

We are of opinion that the record before us shows that the plaintiff intended to, and did, waive any right that he had to bring an action for damages for fraud. The point is not taken by counsel for the defendant, but it appears to be clearly presented by the record, and the circumstances of the case are such that we deem it our duty to draw attention to it. There is no equity in the plaintiff's claim. According to his own testimony, he was fully informed of the facts of which he now complains as fraud before he had in any manner changed his position, and before the ink on the papers was dry, and before he had collected the check which he received in payment for his interest in the firm. All of his rights could have then been preserved by tendering back the check and demanding that the assignment of his interest be delivered up and bringing an action for an accounting, if an accounting would not then have been given voluntarily. It was a fair inference that defendant would have consented to a rescission if the matter occurred as plaintiff says, for they were both members of the bar, and presumably knew the elementary principle conferring such right and the information would seem to have been imparted to afford plaintiff that opportunity after perpetrating what the defendant assuming plaintiff's testimony to be true, evidently regarded as a joke on plaintiff. There would then have been no difficulty in determining his exact rights and in his recovering precisely the amount to which he was entitled. He was apparently unwilling to surrender up the check, and it is evident that at the time he had no thought of asserting any further right. He knew perfectly well whether these settlements were more favorable than he had figured on in offering his interest in the firm for $3,000, or sufficiently more favorable to warrant him in complaining of the concealment of the fact that the actions were settled. Strictly speaking, it was doubtless an executed contract, but it was scarcely consummated, and only so technically. It was as if the parties were sitting about the table just having signed and exchanged the papers and the consideration, and he was then informed of the facts on which he relies now to establish the alleged deception. These facts render the case analogous to a contract wholly executory, where the fraud is discovered before the party whose consent was fraudulently obtained enters upon the performance of the contract. In such cases the rule is well settled that, if he performs the contract with full knowledge of the fraud discovered intermediate the making of the contract and his performance, he will be deemed to have waived any right to damages, and be confined to the consideration agreed upon. Saratoga & Schenectady R. R. Co. v. Row and Tredway, 24 Wend. 74, 35 Am. Dec. 598; Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Nounnan v. Sutter County Land Co., 81 Cal. 1, 22 Pac. 515, 6 L. R. A. 219.

In the case of the Saratoga & S. R. R. Co. v. Row and Tredway, supra, the court says:

"But, when a party has discovered what he deems a fraud before he has entered upon the performance, he must then decide whether he will stop short, or go on with the contract. He cannot say, 'This is a good contract for the purpose of authorizing me to do the work, but it does not bind me in relation to the rate of compensation.'"

The general rule as to executed contracts is different, and is that ordinarily the party on discovering the fraud has an election whether to rescind or to affirm and retain the consideration and recover damages; but that rule is not of universal application, and it is subject to the exception that the circumstances may be such as to show an intention in affirming the contract to waive any right to recover damages for the fraud. Pryor v. Foster, 130 N. Y. 171, 29 N. E. 123; St. John v. Hendrickson, 81 Ind. 350; People v. Stephens, 71 N. Y. 527; Cooley on Torts (3d Ed.) p. 965; 14 Am. & Eng. Encyc. of Law (2d Ed.) p. 170. See, also, Cain v. Dickenson, 60 N. H. 371; N. Y. Land Improvement Co. v. Chapman, 118 N. Y. 288, 23 N. E. 187; Barr et al. v. N. Y. L. E. & W. R. R. Co. et al., 125 N. Y. 263, 26 N. E. 145.

Under the circumstances of this case, it appears to us that the plaintiff on his own testimony showed an intention to affirm the sale, and waive any right that he had to recover damages on the theory of fraud. Manifestly the rule giving a party an election to rescind or affirm and retain the consideration and bring an action to recover the damages sustained by the fraud was designed for the benefit of a party who by the fraud of another finds himself in a position where a rescission may not afford him full redress, and it was not intended to apply to a case where the fraud was disclosed by the party alleged to have committed it practically simultaneously with the execution of the contract, and before the position of the parties had changed or damages could possibly have been suffered. The plaintiff says that he was attorney for Whalen in the action against French & McCauslan and had tried it, and that he did not when assigning his interest have any doubt.

Assuming, but without deciding—for our impression on this record, as has been seen, is the other way—that the plaintiff had a right in the circumstances to retain and collect the check and recover in an action at law any damages which he sustained by reason of being induced to assign his interest in the firm, it seems quite clear that he would not have a right to recover the difference between the amount that he received for his interest and its actual value, for that would be giving him by both items the total value of his interest, the same as if he had rescinded and demanded an accounting, and it would seem that he should not be permitted in effect to say to defendant, "I will retain and collect your check and sue for damages, which will involve an accounting and result in my being charged merely with the amount of the check as if received on account." Moreover, it cannot be ascertained whether the value he agreed to take for his interest was its actual value on the facts as he understood them at the time, or less or more. He may have been willing to take less, and he may have demanded more than the value of his interest on the facts as he understood them. If less, then giving the difference between what he re-

ceived and what his interest was worth would be allowing him to recover now what he sacrificed for cash when he made the sale. Assuming that his interest with the actions pending was worth $5,000, but that he was willing to accept $3,000 for it, and that with the suits settled it was worth $6,000, the rule now under discussion would allow a recovery for $3,000, which would include $2,000 previously voluntarily thrown off the selling price. It would seem therefore that, if this action could be maintained, the plaintiff would be confined to a recovery for the difference between the value of his interest in the firm with these two litigations pending, one in process of trial and the other having been tried and decided favorably to the firm and pending on appeal, and with the litigations settled upon the basis upon which they were settled.

The rule of damages in actions by vendees to recover damages for fraud in inducing the purchase of property is the difference between the value as the property was and as it was represented to be (Vail v. Reynolds, 118 N. Y. 297–303, 23 N. E. 301; Miller v. Barber et al., 66 N. Y. 558; Hubbell v. Meigs, 50 N. Y. 480), and by analogy it would seem to be applicable to such an action by a vendor. I think that the rule of damages laid down in Gould v. Cayuga Co. Nat. Bank, supra, with respect to an action for fraud in inducing the settlement of a disputed claim, which seems to be that the jury may determine what the plaintiff would reasonably have exacted, and the defendant could reasonably have been expected to pay on the true state of facts, over and above the amount he received, is not applicable, for this was a sale of property or property rights not in dispute, the value of which at most was affected by the settlement of the two actions. The difference between the value of plaintiff's interest as it was and as he was led to believe it was is the rule of damages which both counsel agreed upon the trial of this action was applicable. Under that rule of damages, however, it is doubtful whether there can be a recovery of more than nominal damages, for it is difficult to figure out a theory upon which a money value to the firm can be placed upon the fact that the two litigations were settled instead of pending with such certainty as to warrant a recovery. The plaintiff is presumed to have been familiar with the merits of those actions, and to have taken into consideration 'the probability as to their outcome in fixing the selling price of his interest in the firm. To allow a member of the bar to testify, or to allow a jury to speculate, on what was the value in dollars and cents to the firm of having the litigations terminated by a settlement rather than at the end of the litigation, involving expenses which cannot be estimated with any degree of certainty, would scarcely afford a sufficiently definite basis for an award of damages. The settlement ultimately resulted in the release of funds belonging to the firm, aggregating, after deducting the amount paid in settlement of the McOwen case and other charges against the same, the sum of $32,300. But plaintiff and his partners believed all along that the firm was justly entitled to the funds thus released, and the only doubt they had was as to the amount that McOwen might recover. The plaintiff testified that it had been believed by him and his partners that McOwen would recover about $3,000, which is $3,500 less than he was paid in settlement;

but he says that he was led to believe by what defendant told him that McCauslan had testified to on the trial of that action that there was danger that McOwen might recover his claim in full. According to his own testimony, however, defendant did not tell him that McCauslan gave favorable testimony for McOwen on all items in controversy, but only on part of those to which it had been supposed the firm had a good defense. We agree, therefore, with the trial court that there was no basis for the verdict of $10,000, and we are of opinion, also, that there was no sufficient basis for a recovery even for $666.67.

It follows, therefore, that the order should be modified by striking out the provision giving the plaintiff an election to stipulate that the verdict be reduced, and as so modified affirmed, with costs to the respondent.

INGRAHAM, P. J., concurs.

McLAUGHLIN, J. The facts are set out in the opinion of Mr. Justice LAUGHLIN, and it is unnecessary to repeat them. It is not disputed that by the settlement of the two actions of McOwen v. Whalen and Whalen v. French et al. the assets of the firm were thereby increased many thousand dollars, and that plaintiff's share in such increase alone was considerably more than the $3,000, which the defendant paid him for his entire interest. Nor is the fact disputed that several days before the defendant acquired the plaintiff's interest the two actions had been settled by the defendant without the knowledge of the plaintiff, and there is an abundance of evidence to justify the finding of the jury that he did not know of such settlement at the time he delivered the assignment. The defendant, of course, could purchase the interest of the plaintiff in the firm, but he could only do so by fully and fairly disclosing to his copartner all the knowledge which he had bearing upon the value of the interest to be purchased. Wright v. Duke, 91 Hun, 409, 36 N. Y. Supp. 853. The relation existing between them was one of trust and confidence, and each was bound to act with the utmost good faith towards the other. Butler v. Prentiss, 158 N. Y. 49, 52 N. E. 652; Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252. When, therefore, the defendant acquired the plaintiff's interest, without disclosing to him that the two actions had been settled, it was a fraud upon the plaintiff which entitled him to some relief. If, when the information was acquired, the contract had been fully executed by the delivery of the assignment and the acceptance of the check, the plaintiff had two remedies: He could bring an action in equity to rescind, returning or offering in the complaint to return the check, or keep the check and commence an action at law to recover the damages sustained by reason of the fraud. Gould v. Cayuga County National Bank, 99 N. Y. 333, 2 N. E. 16.

As already said, the verdict of the jury—sustained by an abundance of evidence—establishes the fact that the plaintiff did not learn of the settlement of the two actions until after he had executed and delivered the assignment and received the check in exchange therefor. How can it be said, under such circumstances, that the plaintiff in any way

waived his right to maintain this action, I am unable to perceive. Nothing then remained to be done, so far as the contract was concerned. It had been entirely executed. On discovering the fraud, as I understand the law, the plaintiff was not obliged to disaffirm the contract, and I am unable to see how the fact that he did not do so can be tortured into a waiver or ratification of the fraud practised upon him. Where a contract has not been fully performed, a party who discovers the fraud and thereafter acquiesces in the full performance may be deemed to have waived a claim for damages by reason of the fraud, but here, as we have seen, the contract had been fully performed by the delivery of the assignment and the check, and it is of no importance whether the fraud were discovered five minutes or five years thereafter. The time when such discovery was made in no way affected the rights of the parties. Plaintiff then was entitled to treat the contract as valid and maintain this action. None of the authorities cited in the opinion of Mr. Justice LAUGHLIN, as I read them, are to the contrary; on the other hand, they support this view.

It is of no importance whether or not the rule of damages adopted by the trial court were the correct one, because the rule was the one which counsel for both parties apparently agreed was the correct one to be applied to the facts as proved. The verdict is fully supported by the evidence, and I think it should not be disturbed.

For these reasons, I am of the opinion the order appealed from should be reversed and the verdict reinstated, with costs to the plaintiff.

MILLER and DOWLING, JJ., concur.