FRENCH *v.* MULHOLLAND.

1. COURTS — APPEAL AND ERROR — TRANSFER TO OTHER SIDE OF COURT—JURISDICTION RESTORED TO LOWER COURT ON REMAND.

Where a bill alleging fraud and praying for a partnership accounting, after dissolution, was dismissed by the court below on jurisdictional grounds, the court holding that plaintiff's remedy, if any, was an action at law, and, on appeal, the decree was affirmed and the case remanded to the court below for transfer to the law side of the court, jurisdiction of the case was thereby restored to the court below.

2. TRIAL—TRANSFER OF CAUSE WITHIN DISCRETION OF COURT AFTER DELAY SATISFACTORILY EXPLAINED.

Where nearly a year elapsed after a case was remanded to the court below for transfer to the law side of the court, and in the meantime defendant had not moved for dismissal, it was within the discretion of the court to grant plaintiff's motion to transfer it, upon a showing of satisfactory cause for delay, notwithstanding the statute (3 Comp. Laws 1915, § 12351) provides that if a case is brought on the wrong

[1]Appeal and Error, 4 C. J. § 3270 (Anno); 21 A. L. R. 21; 20 R. C. L. 931; 4 R. C. L. Supp. 1391; 6 R. C. L. Supp. 1240; [2]Trial, 38 Cyc. p. 1294.

side of the court it shall be "forthwith" transferred to the proper side.

3. APPEAL AND ERROR—DELAY—ABUSE OF DISCRETION NOT SHOWN.
    The Supreme Court cannot hold that there was an abuse of judicial discretion in granting plaintiff's motion to transfer a case to the law side of the court after nearly a year's delay, where the showing as to the cause of the delay, which was apparently satisfactory to the court below, is not disclosed by the record.

4. FRAUD—PARTNERSHIP—EVIDENCE—QUESTION FOR JURY.
    In an action against a former partner for fraud in misrepresenting the receipts from the partnership business during plaintiff's absence, defendant's claim, denied by plaintiff, that there was an agreement between them by which defendant was to have the use of the partnership property during plaintiff's absence and retain the profits, raised an issue of fact which was properly submitted to the jury.

5. SAME—NOT INCUMBENT ON PERSON DEFRAUDED TO DISCOVER FRAUD—FIDUCIARY RELATIONS.
    The fact that plaintiff had the partnership books in his possession for a time after his return and failed to discover the fraud is no defense to an action therefor, since it was not incumbent upon him to discover it, but he had a right, in view of their fiduciary relations, to repose confidence in defendant, who was in charge of the partnership business.

6. SAME—TRIAL—INSTRUCTIONS.
    An objection that the trial court did not properly instruct the jury on the question of fraud, *held*, without merit.

7. SAME—EVIDENCE—ADMISSIBILITY.
    Defendant's offer to show that plaintiff was not defrauded by the former's fraudulent concealment of profits earned by the partnership property before its sale to plaintiff by showing that it was worth more than he paid for it, was properly rejected, since whether he made a good or bad bargain had no bearing on the question of fraud before the sale.

Error to Muskegon; Vanderwerp (John), J.     Sub-

---

[3]Appeal and Error, 4 C. J. §§ 2753, 2781; [4]Fraud, 27 C. J. § 208; [5]Id., 26 C. J. § 72; [6]Id., 27 C. J. § 219; [7]Id., 27 C. J. § 186.

mitted April 20, 1926.    (Docket No. 127.)    Decided
October 3, 1927.

Case by Hart P. French against Arthur J. Mul-
holland for fraud.    Judgment for plaintiff.    Defend-
ant brings error.    Affirmed.

*James E. Sullivan,* for appellant.

*Cross, Foote & Sessions,* for appellee.

STEERE, J.    The parties to this action were part-
ners conducting an amusement park near Muskegon.
On December 6, 1918, French bought Mulholland's
entire interest in the firm and paid him the agreed
price.    French claimed to have thereafter discovered
that Mulholland, while managing their business during
the summer of 1918, had taken advantage of French's
absence to appropriate a portion of the profits of the
business and fraudulently failed to account for them be-
fore or at the time of their settlement and dissolution
of partnership.    He first filed a bill for an accounting
in the Muskegon county circuit court in chancery,
which, when brought to hearing, was dismissed on
jurisdictional grounds, the court holding that after
dissolution of their partnership plaintiff's remedy for
the alleged fraud was by an action at law.    On his
appeal to this court the decree was affirmed, and the
case remanded to the court of original jurisdiction to
give him an opportunity to move for transfer of the
case to the law side of the court, under section 12351,
3 Comp. Laws 1915 (*French* v. *Mulholland,* 218 Mich.
248 [21 A. L. R. 1]).    On his motion an order of
transfer was made, the pleadings were duly altered
in form though practically the same in material sub-
stance, and the action at law brought on for trial by
jury, resulting in a verdict and judgment in plaintiff's
favor for $1,316.38.    Defendant asks review and re-
versal on writ of error.

The first of defendant's 55 assignments of error is directed to the power of the trial court to grant plaintiff's motion to transfer the case to the law side of the court.     It appears that motion was not made until nearly a year after this court had ordered the case remanded.     When made it was opposed by defendant and argued by counsel.     What showing was made touching the delay does not appear, but it was evidently found sufficient by the trial court in the exercise of its judicial discretion.     Counsel for defendant stress the word "forthwith" in the provision of the statute that if it appears a case has been brought on the wrong side of the court, "it shall be forthwith transferred to the proper side, and be there proceeded with, with only such alteration in the pleadings as shall be essential."     If it was the duty of the trial court on its own initiative to make an order of transfer forthwith without any action of counsel, as has been suggested, the court in the first instance pursued the wrong course in dismissing plaintiff's bill. While our previous opinion in form affirmed the order of the lower court dismissing plaintiff's bill, it made plain that the case as such should not have been dismissed from the court until opportunity was given after its remand for plaintiff to move for its transfer.     The remand restored jurisdiction to that court with first opportunity for further action to plaintiff.     Defendant did not in the meantime move for dismissal of the case because plaintiff had not availed himself of his opportunity within a reasonable time to move for transfer.     The case was yet pending in that court when he finally made his motion and the court yet had authority to act upon and grant it, if in the opinion of the court there was satisfactory excuse for the delay.     The court evidently so found, as defendant's objection had raised that issue.     This record does not disclose what showing was made.     We cannot hold

there was any abuse of judicial discretion in granting the motion.

These parties had previously been partners under an oral agreement in the amusement business which they conducted chiefly in a park near Muskegon on the shore of Lake Michigan. Having secured a 5-year lease from the owner of that park, they, on April 15, 1915, executed a written contract of partnership for a period of five years, agreeing to continue as partners in the amusement business under the firm name of—

"French & Mulholland, the business of said firm to be the conducting and managing of said Lake Michigan Park for mutual pecuniary profit."

The somewhat elaborate provisions of their partnership contract, composed of recitals and agreements, may be concentrated so far as involved here to a recital that each had contributed to the firm his interest in certain property which they then jointly owned, consisting of merry-go-round, ferris wheel, shooting gallery, and various other articles of equipment for that purpose listed in a schedule referred to. It provides that each of the partners shall devote his time and personal attention to the business, and may draw from it $20 per week for personal use or expenses, to be charged to their respective accounts on the partnership books, which were to be kept open and accessible to both and that—

"Once in each week, or oftener if necessary, shall make, yield and render each to the other a true, just and perfect account of all profits and increase by them, or either of them, made, and of all losses by them, or either of them sustained on account of the said copartnership business and also all payments, receipts, disbursements and all other things by them made, received, disbursed, acted, done or suffered in said copartnership and business, and when such account is so made, they shall each to the other, clear, adjust, pay and deliver their just shares of the profits and pay

and bear their just share of the expenses and losses of said business.   *   *   *

"At the end of the term of said copartnership, the parties hereto, each to the other, shall make a true, just and final account of all things, relating to their said business, and in all things truly adjust the same, and all of the property of said copartnership, including the gains and increases thereof, remaining, shall then be equally divided between them, whether the same be in money, goods, wares, fixtures, indebtedness or otherwise."

It appears from the undisputed testimony that the firm had, as a part of its business and by mutual consent of the partners, operated in the same line of business at fairs in the fall, using the partnership equipment worth several thousands of dollars, the firm bearing expenses and dividing profits as a part of their partnership business.    Plaintiff testified that this occurred regularly every fall after the busy waterfront amusement season had dropped off.    While there is some dispute as to the extent to which this was done, their partnership books and undisputed testimony tends to confirm plaintiff's testimony in that matter.    He testified:

"The fact is the fairs paid usually half as much or nearly half as much as the park season.   *   *   *
"Q. Had there been profits made in former years?
"A. Yes, sir.    Always made profits."

The business of the partnership was carried on amicably, so far as shown, until the season of 1918.    In the spring of that year before their season opened it was arranged to relieve plaintiff from devoting his time to the business that year, as he expected to be absent most of the time in the south on other matters, and defendant was to conduct the business of the firm as usual, he to draw $25 per week, and French to receive no weekly compensation.

Plaintiff's claim of fraudulent representation as to

240—Mich.—11.

the business of that season during his absence, for which he seeks to recover, relates to moneys collected by defendant, and, while entered on the daily report sheets, not deposited by him or otherwise accounted for; moneys received by defendant but not entered on daily report sheets nor disclosed to plaintiff or accounted for; and for unreported profits on four fair operations during that year at Holland, Hart, Centerville, and Hartford, making a total of $1,414.81, including interest, claimed by plaintiff.

It is contended by defendant, and denied by plaintiff, that, when they made the arrangement in the spring of 1918 for plaintiff to be absent during that season, it was agreed defendant might conduct fairs with the partnership equipment as usual and retain the profits.    During that whole time he credited himself against the firm with $25 per week, and in a separate report to plaintiff showed a loss in that activity of $2.25, while plaintiff introduced testimony which, if believed, showed a profit over expenses of $844.84.    Upon this contention there was a square issue of fact properly submitted by the court to the jury, which found in favor of plaintiff's contention as to their agreement but apparently somewhat reduced the amount of his claim.

A considerable portion of defendant's brief is devoted to the contention that a verdict should have been directed in his favor as plaintiff did not rely upon any representations made by defendant, they were both mature business men, and the books were in plaintiff's charge for a week or more before the settlement was made.    Plaintiff does not deny that he had the books, but says he did not examine them thoroughly, and claims they fail to show the true income and profits of the business for that year while defendant was in sole control.    It is undisputed that during the time in question defendant was in charge of the

books of the firm, which his wife was paid by the firm for keeping, and it was his duty, incidental to his fiduciary relations with plaintiff, to see that they were properly kept, and under their partnership contract to "make a true, just and final account of all things, relating to their said business," etc.    It is plaintiff's contention, with supporting testimony, that a thorough examination of the books would not have disclosed many of defendant's shortages.    Upon that proposition it has been held not to be incumbent upon the party claiming to be defrauded to have promptly discovered the fraud, but only after discovery of the alleged fraud is prompt action required.    In *Smith* v. *Werkheiser,* 152 Mich. 177, 180 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406), where no confidential relations were shown, this court said of permission to examine books:

"It is urged that inasmuch as the books were placed at their disposal complainants were bound to ascertain the truth and to place no reliance upon the false statements that had been made to them.    This is not the law.    A defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud.    *Smith* v. *McDonald,* 139 Mich. 225; *Bristol* v. *Braidwood,* 28 Mich. 196."

In view of their fiduciary relations plaintiff had a right to repose confidence in defendant, who was left in charge of their partnership business and acting as agent for the absent partner.

It is further contended for defendant, with quotations of careful definitions of fraud and citation of numerous authorities, that the court did not properly instruct the jury upon that subject.    With this we are unable to agree.    While the charge is lengthy and the matters involved are discussed from many angles, among other things the court said:

"I instruct you, gentlemen, that fraud is a false statement or statements made for the purpose of inducing

another to part with money or other valuable things, which are calculated to influence the person to whom they are made and which, of course, do actually deceive the person to whom they are made, thereby inducing him to part with his money or other valuable things.

"I also instruct you that under the claims of the parties in this case, the evidence and circumstances of the case, before the plaintiff here can recover he must convince you by a preponderance of the evidence, first, that the representations were made by the defendant as the plaintiff claims in this case, and, second, that the plaintiff relied upon the representations of the defendant and that he was deceived and damaged thereby. You will first consider the question as to whether the representations claimed by the plaintiff were made by the defendant. You will remember that the representations which it is claimed the defendant made was that he had accounted for all moneys of the partnership and partnership business which had come to his hands and that the plaintiff had received his full share thereof. As I say, you will first determine whether those representations were made, and if these representations were made by the defendant then you will determine whether they were true or not, and if they were not true then you will determine the further question whether the plaintiff relied thereon and was deceived thereby and was induced thereby to purchase Mulholland's interest in the firm and pay him therefor the sum of $4,382 and the taxes assessed against the firm for 1918 and cancel the leases between the defendant and the firm and terminate the partnership. If you find that these various elements which I have explained to you were present in this case it will constitute fraud on the part of the defendant. * * *

"Fraud can never be presumed and is never presumed but must be proved, and the burden is upon the party alleging the fraud, that is, the plaintiff here, to prove such allegations by a preponderance of the evidence. It cannot be lightly inferred but must be proven as alleged. If the defendant is guilty of fraud it means that he fraudulently deceived the plaintiff as I have heretofore instructed you."

The sale in this case was based on a give or take

proposition.    As bearing on the contention plaintiff was not defrauded, defendant's counsel stresses the fact that plaintiff made the first offer.    It appears that while in Chattanooga, Tennessee, he wrote defendant of his favorable impression of that city, was considering a tentative offer for his interest, and suggested amongst other things:

"I wish you would write me what you will give for my interest or take for yours.    The figures must be the same.    This will include all we own in partnership.    In case you buy I will give you time if desired. I really rather sell than buy."

That he had other plans in mind and desired to sell his interest is not disputed, but their partnership contract provided:

"Neither partner has the right to dispose of his interest in said copartnership to a third party without the consent of the other partner."

On plaintiff's return to Muskegon he renewed the proposition, to which defendant agreed, and stated the price at which he would sell or buy, resulting in plaintiff's accepting his sale offer.

Defendant sought to show plaintiff was not defrauded by the former's fraudulent concealment of profits earned by the partnership before the sale, by showing the property he bought from defendant was worth more than he paid for it, and error is urged against the court's ruling that such testimony was incompetent.    No claim is made of any misrepresentations to plaintiff as to the property he bought at that sale.    Whether the purchase by him for the price defendant offered to sell was a good or bad bargain had no tendency to elucidate the issue of whether defendant made false and fraudulent representations to plaintiff as to profits earned by the partnership before it was dissolved, half of which belonged to plaintiff. While plaintiff's counsel objected to the defense going

into details on that claimed irrelevant issue, and the objection was sustained, defendant did incidentally testify that his interest was worth $8,000, and when objection was made the court said: "He says it was worth that. We will let it go at that."

This case was exhaustively tried by able counsel and the record is freighted with objections and exceptions. A detailed review of defendant's many assignments of error relating to the court's rulings during the progress of the trial and in subsequent proceedings would be of no general interest and profit nothing. The testimony has been carefully read and considered in connection with defendant's other assignments of error. On this record, viewed in its entirety, we are of opinion that the case was fully and fairly tried on its merits, the material issues on both sides were fully developed by permitted testimony, and issues for the jury to decide were impartially submitted by the court with proper explanations as to the rules of law under which the jury should decide the facts.

We find no prejudicial error demanding reversal, and the judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.