[S. F. No. 13374. In Bank.—October 28, 1930.]

JOHN JOHNSTONE, Appellant, v. M. E. MORRIS, Respondent.

Hugh K. McKevitt for Appellant.

James M. Hanley for Respondent.

THE COURT.—This is an action on a promissory note. The complaint alleges the execution and delivery of a promissory note by defendant to plaintiff in the sum of $16,800; that $4,250 has been paid thereon; that $12,550, together with interest and attorney's fees are due, owing and unpaid. The defendant's answer admits the execution and delivery of the note; admits that but $4,250 has been paid thereon, and by way of defense alleges that plaintiff has in his possession approximately $15,000 belonging to this defendant, and sets up the same by way of counterclaim. The defendant also filed a cross-complaint, in which it is substantially set forth that the above note was given by defendant to plaintiff upon the dissolution of a partnership theretofore existing between the parties; that on September 30, 1923, said partnership was dissolved by the defendant purchasing the plaintiff's interest for the sum of $26,800, $10,000 of which was paid in cash, the balance being represented by the promissory note above mentioned; that no extensive accounting was had at the time of dissolution; that during 1922 and 1923 the wife of plaintiff, Corrine Johnstone, acted as the bookkeeper of the partnership; that during that period plaintiff and his wife entered into a conspiracy to defraud the defendant by means of false entries in the account books and misappropriations of funds belonging to the partnership; that $30,000 is the approximate sum so misappropriated, of which one-half, or $15,000, belongs to this defendant by virtue of the partnership relationship. Defendant and cross-complainant prays that plaintiff take nothing by his action; that the court order an accounting to

determine the exact amount misappropriated; that the defendant have as damages for the alleged fraud the difference between the amount misappropriated and the amount due on the note.

Plaintiff, in answering the cross-complaint, denied the existence of the conspiracy and fraud; alleged that during the entire existence of the partnership from 1917 to 1923, defendant was a silent partner in the business; that neither the public nor Corrine Johnstone knew that in fact defendant was a partner; that Corrine Johnstone, in the honest belief that her husband was the sole owner of the business, had invested $1825 of her own money in the business and $1200 belonging to her mother; admits that in 1922 Corrine Johnstone withdrew $500 from the business, and admits that she withdrew $3,500 in 1923, but alleges that the same was done without her husband's knowledge and consent, and in the honest belief that plaintiff, her husband, was the sole owner of the business.

Over the protest of plaintiff and at the request of the defendant the court granted a jury trial on all the issues. The jury rendered a verdict "in favor of the defendant M. E. Morris and against the plaintiff John Johnstone", thus in effect finding that plaintiff had misappropriated $12,550 of defendant's money, since that was the amount due on the note, and the verdict determines that plaintiff is entitled to nothing. From the judgment duly entered in accordance with the above verdict, plaintiff prosecutes this appeal.

Appellant contended in the trial court, and having been overruled there, contends on this appeal, that the cross-complaint of respondent, both by the issues raised and the relief demanded, appeals to the equity side of the court, and that on those issues a right to trial by jury does not exist. Furthermore, appellant contends that these equitable issues should first have been determined by the court without a jury. The basis of appellant's contentions in this respect is that the cross-complaint is fundamentally based on the partnership relation, and the action is essentially no more than an action for an accounting between partners.

It is an almost, if not universally, accepted rule, that in the absence of statutory permission, an action at law as distinguished from an action in equity cannot be maintained

between partners with respect to partnership transactions. It is also well settled that the mere fact a dissolution of the partnership has taken place before the action is brought does not change the rule that no action at law can be maintained between partners. (See exhaustive annotation "Actions at law between partners and partnerships," 21 A. L. R. 21, particularly at pp. 34 and 84.) ■ But to this rule that no action at law will lie between partners, even after dissolution, there is one well-recognized exception. Where a partnership has been dissolved by one partner purchasing the other partner's interest under a give or take proposition without a full and complete accounting, and later the purchasing partner discovers that the selling partner was guilty of fraudulently hiding assets or misappropriating partnership funds during the existence of the partnership, the purchasing partner may elect to rescind the purchase and sue for an accounting in equity, or he may affirm the purchase and sue at law for damages suffered by virtue of the fraud and deceit. If this last alternative be selected, it seems to be well settled that equity has no jurisdiction, the action being one at law. The courts of this state seem never to have directly passed on this question, but there is ample authority to be found in decisions from other jurisdictions. In the case of *French* v. *Mulholland*, 218 Mich. 248 [21 A. L. R. 1, 187 N. W. 254], the following factual situation existed: French and Mulholland, after having been engaged in a partnership, dissolved the same by a give or take proposition, French buying out Mulholland. Later French discovered that Mulholland, while acting as manager of the partnership before its dissolution, had failed to account for certain profits. French affirmed the sale and then brought an action in equity for an accounting. The court held that under these circumstances an action at law for the fraud and deceit was the proper remedy, and that an action in equity would not lie. The Supreme Court of Michigan summed up the situation as follows:

"Plaintiff, by affirming the sale to him, has affirmed the dissolution of the copartnership and the settlement, except as he may, if he has been defrauded, have a remedy for the fraud and deceit practiced upon him.

"If plaintiff has suffered loss in adjusting the partnership relation with defendant, through fraud or deceit of

defendant, his remedy does not lie in a partnership accounting, but in an action planted upon such fraud and deceit. . . .

"Plaintiff in this case had a right to impeach the settlement with his copartner, for the fraud and deceit alleged, if practiced upon him, but such is not the remedy he seeks. The allegations in the bill state an action for fraud and deceit in making a settlement of the partnership affairs, and plaintiff elected to have such settlement stand."

After considering several authorities, the court concludes: "Plaintiff has an adequate remedy at law, and the learned circuit judge was right in holding that the equity court had no jurisdiction."

The case was, therefore, transferred to the law side of the court. (See 240 Mich. 156 [215 N. W. 350] for the same case on appeal after decision by the law side of the court.)

Another case laying down the same rule is *Crockett* v. *Burleson,* 60 W. Va. 252 [6 L. R. A. (N. S.) 263, 54 S. E. 341], where, after dissolution caused by one partner purchasing the other partner's interest, the purchasing partner discovered that the seller had fraudulently represented the status of the account between them, and brought an action at law for the fraud. The sole question on appeal was whether such action could be maintained. The Supreme Court of Appeals of West Virginia held that it could, stating, among other things:

"The gravamen of the action in this case is the alleged tort—the alleged personal wrong done to one partner by another, as to which there can be no partnership relation. The late partnership is in no way concerned. It cannot be conceived that there is anything in the former partnership relation which prevents the maintenance of this action brought for damages for the alleged deceit."

In the fairly recent case (1929) of *Wright* v. *Lake,* 178 Ark. 1184 [13 S. W. (2d) 826, at page 827], it is said in reference to this type of case:

"The contract of dissolution stands, and the partnership relation no longer exists. The ground of action is in no way connected with the state of the partnership business, except that the defendant is alleged to have withheld from the plaintiff a part of the profits for three different years and to have converted the same to his own use. A certain

specified and definite amount is alleged to have been withheld by the defendant for three different years and to have been fraudulently converted to his own use. The alleged fraud and deceit is not asked to be a ground for setting aside the settlement between the partners or for reforming the accounts. The right of the action in this case is the alleged tort of Lake in fraudulently withholding from the plaintiff in each case a certain part of the profits of the partnership for three different years and converting the same to his own use. The former partnership between the parties is in no way concerned, and there is nothing in the former partnership relation which prevents the maintenance of this action for the alleged deceit.''

See, also, *Farnsworth* v. *Whitney,* 74 Me. 370; *McAuley* v. *Cooley,* 45 Neb. 582 [63 N. W. 871]; *Binney* v. *Delmar,* (N. Y. Com. Pl.), 17 N. Y. Supp. 524; *Kelly* v. *Delaney,* 136 App. Div. 604 [121 N. Y. Supp. 241], affd. in 205 N. Y. 618 [98 N. E. 1105]; *Wicks* v. *Lippman,* 13 Nev. 499; annotation, 21 A. L. R. 21, at p. 97.

■ The reasoning of the above cases appeals to us as stating the proper rule. It is true that respondent herein has, among other remedies, asked for an accounting, but that relief is merely incidental as part of the proof of the fraud. The essential nature of the action was for fraud and deceit in the misappropriation of funds. The action was not one for an accounting. The mere fact that in determining the damages many items were involved would in no way change the nature of the action, nor would it deprive the law courts of jurisdiction. As stated in *Otsego Sanitary Milk Products Co.* v. *Allegan, Circuit Judge,* 234 Mich. 277 [207 N. W. 890]:

''The only relief sought by either party in the original case is a money judgment or decree. It is said by one of the parties that the number of items involved approximates 3000, and by the other that the number does not exceed 50 . . . but the fact that the items are numerous does not deprive a court of law of jurisdiction.''

From the above reasoning it follows that, the action being one at law, the defendant was entitled to a jury trial.

■ Just as appellant has misconceived the nature of respondent's pleading, so has he misconceived the nature of the dissolution agreement. The evidence shows that the

parties arrived at the value of the business by roughly estimating the actual value of the stock on hand. Respondent then agreed to pay one-half of this sum as and for the appellant's interest. Appellant therefore contends that respondent got full value for the note—that the note only represented the actual tangible value of the property. After reasoning thus, appellant concludes that the "agreement (of dissolution) operated as a complete and final settlement between the parties". This conclusion does not follow. Respondent is not seeking relief for fraud in representing the value of the business at the time of dissolution, but is seeking relief for the fraud and deceit of appellant in misappropriating past profits of the partnership, already earned, and to which respondent was entitled to a share at the time of the dissolution. In other words, on the date of dissolution appellant, according to the allegations of respondent's pleadings, was indebted to respondent in the sum of $15,000 by reason of his fraud and deceit. Respondent was ignorant of the fact, believing that at that time appellant owed him nothing. Obviously, if respondent had known of the indebtedness arising out of appellant's fraud he would have deducted the same from the amount of the note. Under such circumstances, the agreement of dissolution could, under no theory, amount to an accord and satisfaction of this indebtedness, respondent being in ignorance of its very existence. To reach such a result would be to place a premium on successful fraud and this the law does not permit.

A somewhat analogous and equally fallacious contention is made by appellant in his contention that the alleged fraud is not a defense to an action on the note, and could not be set forth as the proper subject of a cross-complaint. Under the above facts there can be no doubt that the alleged indebtedness caused by appellant's fraud could properly be set forth as a counterclaim under section 438 of the Code of Civil Procedure or as a cross-complaint under section 442 of the Code of Civil Procedure.

Appellant's next assignment of error deals with the question as to the admissibility into evidence of an accountant's summary of the books of account of the partnership. Mr. Dolge, a certified public accountant, was called as a witness by respondent. He testified that he had examined

the available books of the concern dealing with the period from January 1, 1923, to September 30, 1923, and had made a summary thereof. This summary or report, he testified, "is for the most part in my own handwriting. I examined the books". Some of the detail work was delegated to assistants who worked under the supervision and control of Dolge. The trial court correctly admitted the report in evidence. Section 1855 of the Code of Civil Procedure provides in part:

"There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: . . . 5. When the original consists of numerous accounts or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

Although it is true that Mr. Dolge did not do all of the actual checking required, we do not deem that essential to permit the summary to be introduced. He testified very clearly that his report was made from the original tags, checks and books of account, and that he had personal knowledge of the same. The tags, checks and books were all made available to appellant, and could all have been introduced into evidence, but it was to prevent such a time wasting and lengthy procedure that section 1855, subdivision 5, of the Code of Civil Procedure was passed. (See *Wilson* v. *Alcatraz Asphalt Co.*, 142 Cal. 182, 189 [75 Pac. 787]; *Shields* v. *Rancho Buena Ventura*, 187 Cal. 569, 573 [203 Pac. 114]; *Globe Manufacturing Co.* v. *Harvey*, 185 Cal. 255, 261 [196 Pac. 261]; *Kinney* v. *Maryland Casualty Co.*, 15 Cal. App. 571, 574 [115 Pac. 456]; *McPherson* v. *Great Western Milling Co.*, 44 Cal. App. 491, 495 [186 Pac. 803].)

Appellant next contends that the evidence is insufficient to support the verdict in the following respects: The Dolge report covers the period from January 1, 1923, to September 30, 1923, and for that period concludes that the sum of $19,581.06 was unaccounted for. Appellant admits, in addition, that $500 was appropriated by Mrs. Johnstone in 1922. The total appropriations amount, therefore, to $20,081.06, of which one-half, or $10,040.53, belonged to each partner. Appellant contends that this is the only evidence of misappropriations to be found in the record, and that, assuming the jury believed that the entire sum had

been misappropriated and was chargeable to appellant, still there would be a balance due on the note for which judgment should have been rendered in favor of appellant. Respondent admitted that $12,550 was still unpaid on the note, and if respondent's share of the misappropriated money be deducted from the amount due on the note, there would still be a balance in appellant's favor of $2,509.47. Appellant, therefore, contends the verdict being unsupported by the evidence, a new trial should be granted. This entire argument is predicated on the fact that the Dolge report and the admissions in the pleadings provided the only evidence from which the jury could determine the amount misappropriated, but such was not the fact. Considerable evidence is to be found in the record in reference to transactions not reflected in the Dolge report, nor in the pleadings. For example, both parties produced considerable evidence in reference to a transaction referred to as the "Mack Truck Transaction", from which respondent claimed appellant made a large profit which he should have but did not credit to the partnership. During this discussion a conditional sales contract was introduced in evidence indicating that $5,750 had been received for the truck. The Dolge report was never intended as the sole evidence of misappropriations, nor was it ever contended that it was absolutely correct. It was merely offered as an approximation based on the available books. The jury evidently did not believe appellant's explanation, either of the items in the Dolge report or in reference to the Mack truck transaction. It was for the jury to weigh the evidence and judge of the credibility of the witnesses, and this they have done. Under elementary principles the jury's determination, under such a state of facts, cannot be interfered with on appeal. The rule, amply supported by authority, is thus stated in 24 California Jurisprudence, 886, section 135:

"Conclusive proof, however, is never necessary to justify a verdict, and a general verdict will be upheld if it finds support in the evidence, adduced upon the whole case. Obviously, under the system prevailing in California, the jury are the exclusive judges of the weight of the evidence and the credibility of witnesses, and it is, as has often been observed, peculiarly within their province, when considering the evidence, to give to it whatever weight it may, in their

deliberate judgment, be entitled to, and to draw all reasonable inferences therefrom or, if it be their judgment that the evidence is entitled to no weight in the determination of the ultimate issue, to disregard it altogether.''

Appellant next contends that the evidence was insufficient to show a conspiracy to defraud respondent by appellant. Appellant correctly states that there is no direct evidence in the record showing that appellant and his wife acted in concert, all the direct evidence showing that Mrs. Johnstone was in ignorance of the partnership relationship, and was laboring under the impression that her husband owned the business, and took the money under that assumption. Moreover, both Mr. and Mrs. Johnstone testified that Mr. Johnstone had no knowledge of the misappropriations by his wife. But we do not deem it necessary in such an action to show the conspiracy to defraud by direct evidence. The jury was not bound by the direct evidence of the Johnstones. The inherent probability or improbability of that testimony was a matter for them to determine from all the facts and circumstances. The evidence shows that at all times herein involved Mr. and Mrs. Johnstone were husband and wife, living together as such. They both testified that Mrs. Johnstone handled all of the finances of the family. Mr. Johnstone testified that ''Mrs. Johnstone and I took charge of the financial end of the business . . . My wife had a bank account. I never saw it. I never wanted to see it''; and also testified that ''Mrs. Johnstone handled all the money including our salaries.'' The evidence also showed that during this period Mrs. Johnstone purchased a $1000 diamond ring, a $2,800 Packard, and started payments on a $9,500 home; that she usually carried large sums on her person, many times over $1000 in cash. It is hard to believe that under these circumstances Mr. Johnstone was or could be in ignorance of the fact that his wife was appropriating large sums of the partnership money. In cases of conspiracy to defraud it is not to be expected that direct evidence of the conspiracy can be secured, because such evidence could usually only be secured in the event one of the conspirators confessed. The jury may infer the conspiracy from all the circumstances, and if the inference is a reasonable one it will not be disturbed on appeal. These principles have repeatedly been recognized by this

court. In *Revert* v. *Hesse,* 184 Cal. 295, at 301 [193 Pac. 943, 946], this court, quoting from a Georgia case, said:

" 'The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which conspiracy may be inferred. . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances. . . . ' "

On the same page (301) the court continued as follows: "In the present action, while plaintiff was unable to prove any formal agreement between defendants Arthur Hesse and Sidney Beach, nevertheless, there was before the court the entire transaction resulting in the consummation of a flagrant fraud upon the plaintiff, in which transaction Sidney Beach participated as an intermediary. . . . These circumstances, coupled with the further fact that defendants Sidney Beach and Arthur Hesse were not strangers, but were on more or less intimate terms, occupying the same office, were sufficient to warrant the inference drawn by the trial court that defendant Sidney Beach was a party to a conspiracy which had for its object the fraudulent conversion complained of by plaintiff."

In *Beeman* v. *Richardson,* 185 Cal. 280, at page 282 [196 Pac. 774, 775], the rule is stated as follows:

"The point in connection with the finding as to a conspiracy is that the representations were made by the defendant, Richardson, alone, and that there is no direct evidence that the other defendants agreed that they should be made, or knew at the time that they were being made. But direct evidence of that character could hardly be had in the very nature of things, unless one of the defendants should confess, and the fact must be determined by the inference naturally and properly to be drawn from those matters which can be, and are directly proven."

Under the evidence partially summarized, *supra,* the inference of joint fraud was not unreasonable, and will not be disturbed on appeal.

■ The next assignment of error deals with the failure of the trial court to give an instruction to the effect that a person does not necessarily lose money by faulty bookkeep-

ing. Sufficient. it is to say that the record before us does not contain all of the instructions of the trial court. It is well settled that when all the instructions given by the trial court are not included in the record on appeal, it will be assumed that were the entire charge of the trial court before us it would not show error, and that any imperfection in the instructions was harmonized and a correct statement of the law made. (*Goldman* v. *Dahlberg,* 79 Cal. App. 380, 382 [249 Pac. 536]; *Barrington* v. *Pacific Elec. Ry. Co.,* 83 Cal. App. 100, 103 [256 Pac. 567]; *Heffner* v. *Gross,* 179 Cal. 738 [178 Pac. 860].) Moreover, the question of the validity of the various items of the Dolge report and the errors in the bookkeeping system were squarely and clearly presented to the jury.

For the foregoing reasons the judgment appealed from must be and hereby is affirmed.