[L. A. No. 4858. In Bank.—March 11, 1921.]

GEORGE H. BEEMAN, Respondent, v. J. C. RICHARD-SON et al., Appellants.

[1] FRAUD—FALSE REPRESENTATIONS—SUFFICIENCY OF FINDING.—In an action for fraudulent representations, if the finding is sustained by the evidence as to one material fraudulent representation, it is sufficient.

[2] ID.—PURCHASE OF STOCK—PROSPEROUS CONCERN WITH SUBSTANTIAL SURPLUS — MATERIAL FRAUDULENT REPRESENTATION OF FACT.—A representation to a purchaser of corporation stock that the corporation was prosperous and had a surplus cf forty thousand dollars, when in fact it was hard pushed for money and had a book surplus of but six thousand dollars, was more than a mere statement of opinion upon which the purchaser had no right to rely, but was a false, fraudulent, and material representation of fact.

[3] ID.—CONSPIRACY TO DEFRAUD—SUFFICIENCY OF EVIDENCE.—In an action by a purchaser of corporation stock for damages for fraudulent representations, evidence showing directly that the sale to the plaintiff was made pursuant to an agreement among the defendants making the sale a joint undertaking, and showing a situation such as to justify the inference that the defendants, other than the one making the representations, either knew of the representations, or that some kind of imposition was being practiced without informing themselves, is sufficient to justify a finding of a conspiracy of the defendants to defraud, without any direct evidence as to knowledge of the making of such representations.

[4] ID.—DAMAGE—EVIDENCE.—In such an action, evidence that plaintiff was induced by fraudulent representations to buy stock in a company in the belief that it was a prosperous concern with a substantial surplus, when in fact it was on the verge of bankruptcy and actually went into bankruptcy two months later, was sufficient to prove damage.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Oliver O. Clark and George M. Pierson for Appellants.

Moote & Patterson for Respondent.

OLNEY, J.—The plaintiff brought suit to recover from the defendants the sum of five thousand five hundred dollars, which he had paid a corporation known as the Richardson, Holmes & Lamb Company for fifty shares of its capital stock. The cause of action as set out in the complaint was that the defendants were the stockholders and officers of the corporation; that the plaintiff had been induced to purchase the stock by their fraudulent representations made to him, pursuant to a conspiracy between them to defraud him, and that the stock had proven worthless. After trial the lower court made findings in substantial accord with the averments of the complaint, and gave judgment for the plaintiff. The defendants appeal, and the sole grounds urged for reversal are that there is no evidence to sustain the findings as to (1) fraudulent representations, (2) conspiracy, and (3) damage to the plaintiff.

[1] As to the finding of fraudulent representations, it is not necessary to detail all the representations which are

alleged and found to have been made and the evidence concerning each. If the finding is sustained as to one material fraudulent representation, it is enough. That there was evidence of one representation of this character is certain. [2] The complaint alleged, the plaintiff testified, and the court found that to induce the plaintiff to make the purchase it was represented to him that the company was a prosperous one, with a surplus of forty thousand dollars and a rapidly growing business which required more capital, and that the stock was being sold for the purpose of obtaining it. The facts of the matter, practically uncontroverted, were that the corporation was in straitened circumstances, so straitened that it failed five months later and paid its creditors but seventy cents on the dollar and its stockholders nothing; that instead of a surplus of forty thousand dollars it had, according to its own books, a surplus of only a little over six thousand dollars; that the stock was sold the plaintiff not solely for the purpose of securing more capital for the company, but also for the purpose of securing funds to meet pressing personal obligations of the defendants, and that the plaintiff's money was in part so used. With this contrast between the representation and the facts, it would seem well-nigh beyond argument that the representation was false, fraudulent, and material. The representation that the company was prosperous and had a surplus of forty thousand dollars, when the fact was that it was hard pushed for money and had a book surplus of but six thousand dollars, was more than a mere statement of opinion upon which the buyer had no right to rely. The statement that the sale was to secure more capital for the company was made when it was the intention that some at least of the plaintiff's money, in case he purchased, should not be so used. The plaintiff conceived, and it was in effect represented to him, that he was buying treasury stock, the purchase price of which would go to strengthen the company, when it was the intention to sell him, and there was sold him in fact, stock already issued, so that a part of his purchase price was diverted from the company to the defendants.

[3] The point in connection with the finding as to a conspiracy is that the representations were made by the defendant, Richardson, alone, and that there is no direct evi-

dence that the other defendants agreed that they should be made, or knew at the time that they were being made. But direct evidence of that character could hardly be had in the very nature of things, unless one of the defendants should confess, and the fact must be determined by the inference naturally and properly to be drawn from those matters which can be, and are directly proven. The inference of a joint fraud is, of course, not one to be lightly drawn, and can only be drawn in case the facts in evidence are sufficient to overcome the presumption against wrongdoing. But in this case the evidence showed directly that the sale to the plaintiff was made pursuant to an agreement among the defendants in advance, that is, that the making of the sale was a joint undertaking, and also showed a situation such as to justify the inference that the defendants other than Richardson either knew of the representations which the latter was employing to effectuate their common purpose, or, what is the same thing in legal effect, knew that some kind of imposition was being practiced by him for that purpose without informing themselves as to exactly what it was.

The arrangement for the purchase by the plaintiff was made in March, 1914, and finally consummated a month or so later. At the first of that year the company's business had not been going any too well, and the defendants agreed that it was advisable to sell some stock to raise further capital. Nothing was actually done in that behalf, apparently, until February, when business conditions were worse rather than better, and a bank holding the defendants' personal obligations began to press for their payment. It was then agreed to employ a broker, one Dowell, to secure a purchaser, if possible, for some stock. It is a fair inference that at this time a sale was desired for the purpose of using a part of the proceeds, at least, to reduce the defendants' personal obligations to the bank. Nevertheless, in the advertisement for a purchaser which he caused to be made, Dowell represented that the object of the sale was to obtain capital for an expanding business. This advertisement was itself a fraud if known to the defendants. They deny knowing of it, but the court was at liberty to disbelieve them. The plaintiff responded to this advertisement and was put in touch with Richardson, who, after some negotia-

tions, succeeded in making the sale. The other defendants knew of these negotiations and also knew immediately of their final success. In the meantime, the affairs of the company and the defendants had continued to grow worse. It was a situation in which no one of ordinary intelligence who was aware of the real condition of the company and of those interested in it would purchase stock for par plus ten per cent, as the plaintiff did, particularly if he knew that some part of his money would not go to strengthen the company but to certain stockholders individually. Furthermore, it was a case in which anyone contemplating a purchase would almost certainly make inquiry as to the condition of the company and would not purchase unless satisfied in regard to it. In brief, the situation was such that the defendants other than Richardson must have known that the latter could hardly by any possibility make a sale on the terms of that to the plaintiff without the practice of imposition upon the purchaser. When, knowing this, they permitted Richardson to go ahead and negotiate and make a sale in their common interest and pursuant to their common arrangement, they made themselves joint parties with Richardson to whatever imposition he might choose to practice.

[4] As to the finding of damage, the point which appellants make would not seem to be concerned with the amount of the damage proven, that is, with the measure of damages, and there is no occasion for discussing that matter. The point advanced is that there is no proof that the plaintiff was damaged at all by the fraudulent representations. The only statements by appellants' counsel of the point which they desire to make are, ''that there is no evidence to support the finding that plaintiff has been damaged in any sum whatsoever by any representations made to him in connection with this purchase of this stock,'' and, again, that ''the record wholly fails to prove any relation of cause and effect between the representations made and the loss by plaintiff of his fifty-five hundred dollars.'' Upon these assertions, without any reference to the testimony or discussion, the point is permitted to rest. It is rather difficult to reply to such bald assertions otherwise than by saying that as a matter of logic it seems fairly clear to us that when the plaintiff was induced by fraudulent representations to buy stock in a company in the belief that it was a pros-

perous concern with a substantial surplus, when in fact it was on the verge of bankruptcy and actually went into bankruptcy a few months later, the plaintiff was damaged, and damaged by means of the fraudulent representations.

There are no other points advanced for reversal. Judgment affirmed.

Shaw, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.