237 P.2d 715]

[Civ. No. 7950. Third Dist. Dec. 4, 1951.]

CHAS. B. MACHADO, Respondent, v. KATCHER MEAT COMPANY, INC. (a Corporation) et al., Defendants; MAX LEWIS, Appellant.

Theodore Golden and J. Bruce Fratis for Appellant.

Linneman, Burgess & Telles for Respondent.

ADAMS, P. J.—The plaintiff, Chas. B. Machado, doing business as Los Banos Livestock Commission Company, hereinafter referred to as Machado, brought this action against Katcher Meat Company, Inc., a corporation, hereinafter referred to as corporation, Jack Katcher, hereinafter referred to as Katcher, Jr., Abe Katcher, hereinafter referred to as Katcher, Sr., and Max Lewis, to recover $4,163.82. He alleged in his complaint that in Merced County, on or about December 2, 1948, the corporation gave him a worthless check postdated December 7, 1948, for said sum in conditional payment of the purchase price of 21 head of cattle then and there delivered to defendants. In a second count plaintiff alleged that defendants had conspired to cheat and defraud him, and that by reason of their acts and conduct he had been damaged in the sum of $4,163.82.

Abe Katcher was not served with process and did not appear in the action.

The case was tried by the court without a jury. It found the above allegations to be true, that the defendants caused the livestock to be delivered to the place of business of the corporation at Dixon, California, and that there defendants slaughtered and sold the same and Lewis appropriated and converted all sums of money received from the sale to his own use and benefit and still retains the same. The court further found in favor of plaintiff's allegations of a conspiracy by defendants by finding that at and prior to December 2, 1948, Lewis, in conjunction and cooperation with the corporation, Katcher, Jr., and Katcher, Sr., corruptly and unlawfully contrived, conspired, combined and agreed with each other to perform said acts for the purpose of cheating and defrauding Machado, that the acts were the result of the conspiracy, and that thereby Machado was damaged in the sum of $4,163.82.

Judgment was entered in favor of Machado, against Katcher, Jr., and Max Lewis, and each of them, for $4,163.82, with interest and costs. Only Lewis has appealed from that judgment.

The undisputed facts are that Machado owned and operated a livestock auction yard at Los Banos where he conducted auction sales of livestock every Thursday. Katcher, Jr., and Katcher, Sr., are father and son. Katcher, Sr., and appellant Lewis had been friends for 35 years. On May 26, 1947, Lewis lent Katcher, Sr., $1,000. A few weeks thereafter the corporation was formed; and while Lewis denied any

connection with the corporation, Katcher, Jr., who was the secretary-treasurer thereof, testified that Lewis and George Lichenstein, his brother-in-law, were officers and shareholders. He also testified that Lewis was financing the corporation.

Lewis testified that in addition to the original $1,000 which he lent to Katcher, Sr., he lent to the corporation, on July 27, 1948, $3,000, on August 26, 1948, another $3,000, on September 2, 1948, another $3,000, and that the latter three loans were repaid with corporation checks; that on September 27, 1948, he lent the corporation an additional $6,000, and on October 19, 1948, $3,000.

Katcher, Jr., testified that he was buyer for the corporation; that it went out of business a week or two before Christmas of 1948, being without funds; that on December 2, 1948, he bought 21 head of cattle from Machado for $4,163.82; that he was acting for the corporation; that he gave Machado a corporation check for said sum, which was drawn on the Eighth and Broadway Branch of Bank of America in Oakland; that he postdated the check to December 7, 1948, which was five days after the purchase of the cattle, but that he did not mention such postdating to anyone.

Beverly Machado, plaintiff's daughter and his bookkeeper, testified that the postdating of the check was not called to her attention when the check was delivered, which was on Thursday, December 2d; that the next day she tried to deposit the check in the bank and then discovered that she could not do so because it had been postdated; that she then notified her father and he told her to keep the check until December 7, 1948. On December 6, 1948, Machado deposited the check for collection in the Los Banos Branch of the same bank, but when the check reached the Oakland Branch it was dishonored on the ground that the corporation had no funds or credit. The $4,163.82 has never been paid to Machado.

Katcher, Jr., testified that the cattle secured from Machado were taken to the corporation's slaughtering plant at Dixon, California, were slaughtered there on Monday and the meat sold on Tuesday or Wednesday; that he received payment therefor, amounting to a little over $8,000; that it was customary to deposit the proceeds of meat sales in the corporation's bank account to meet outstanding checks, but that, contrary to that custom, Katcher, Sr., instructed him to deposit this money in Katcher, Sr.'s personal bank account in the Lake Merritt Branch of Bank of America in Oakland;

that he did so and received a deposit slip; that thereupon Katcher, Sr., issued his check on that personal account in favor of Lewis for $8,200; that he, his father and Lewis met at his father's house in Oakland and he (Katcher, Jr.) inquired what would happen to the Machado check and other outstanding checks of the corporation which had not been paid, and Lewis told him to "forget about it"; that Lewis knew that Machado and other creditors could not be paid; that he took Lewis to the latter's bank at Eighth and Broadway, Oakland, and there Lewis had his bank telephone Katcher, Sr.'s bank to hold the money for the $8,200 check which his father had given to Lewis. He further testified that Lewis knew that it was the corporation's custom to deposit sale moneys in the corporation's bank account to meet corporation checks issued for purchases of cattle, and that he also knew that payment of the Machado check depended upon the proceeds of the sale of the slaughtered Machado cattle. He also testified that his father and Lewis "used to drive back and forth from Oakland" together; that they were old friends and both lived in Oakland.

Lewis testified that Katcher, Sr., took him to an auction sale in Los Banos in 1948, and that the boy came later. He also testified he may have been there other times. Katcher, Sr., was not called as a witness.

In view of the foregoing evidence, the conduct of the respective parties, the intimacy between Lewis, Katcher, Sr., and the corporation, the manner in which the cattle were bought from Machado and the proceeds paid to Lewis, and the unsatisfactory manner in which Lewis testified, we cannot say that the trial court was not justified in concluding that Lewis was a party to a conspiracy to defraud Machado.

In *California Auto Court Assn.* v. *Cohn,* 98 Cal.App.2d 145, 149 [219 P.2d 511], the court said:

"Each participant in the wrongful act is responsible as a joint tort feasor for all damages ensuing from the wrong, regardless of whether or not he was a direct actor and of the degree of his activity. (*Mox Incorporated* v. *Woods,* 202 Cal 675 [262 P. 302].) Furthermore, because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*Anderson* v. *Thacher,* 76 Cal.App.2d 50, 72 [172 P.2d 533].)"

In *Johnstone* v. *Morris*, 210 Cal. 580, 590 [292 P. 970], the court said:

"In cases of conspiracy to defraud it is not to be expected that direct evidence of the conspiracy can be secured, because such evidence could usually only be secured in the event one of the conspirators confessed. The jury may infer the conspiracy from all the circumstances, and if the inference is a reasonable one it will not be disturbed on appeal. These principles have repeatedly been recognized by this court. In *Revert* v. *Hesse,* 184 Cal. 295, at 301 [193 P. 943, 946], this court, quoting from a Georgia case, said:

" 'The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which conspiracy may be inferred. . . . The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances. . . .'

"On the same page (301) the court continued as follows: 'In the present action, while plaintiff was unable to prove any formal agreement between defendants Arthur Hesse and Sidney Beach, nevertheless, there was before the court the entire transaction resulting in the consummation of a flagrant fraud upon the plaintiff, in which transaction Sidney Beach participated as an intermediary. . . . These circumstances, coupled with the further fact that defendants Sidney Beach and Arthur Hesse were not strangers, but were on more or less intimate terms, occupying the same office, were sufficient to warrant the inference drawn by the trial court that defendant Sidney Beach was a party to a conspiracy which had for its object the fraudulent conversion complained of by plaintiff.' "

In *Beeman* v. *Richardson,* 185 Cal. 280, at page 282 [196 P. 774], the rule is stated as follows:

"The point in connection with the finding as to a conspiracy is that the representations were made by the defendant, Richardson, alone, and that there is no direct evidence that the other defendants agreed that they should be made, or knew at the time that they were being made. But direct evidence of that character could hardly be had in the very nature of things, unless one of the defendants should confess, and the fact must be determined by the inference naturally and

properly to be drawn from those matters which can be, and are directly proven.''

Under the evidence set forth above the inference of joint fraud, and the existence of a conspiracy in which appellant Lewis participated, is not unreasonable, and will not be disturbed on appeal. In view of this conclusion other contentions of appellant need not be considered.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.