[Civ. No. 5641. Third Appellate District—November 9, 1936.]

JACK STERMAN, Respondent, v. ROY H. ZIEM et al., Appellants.

W. I. Gilbert, Jr., and Jean Wunderlich for Appellants.

Bicksler, Parke & Catlin, Frank Catlin, Jr., and William E. Woodroof for Respondent

PULLEN, P. J.—This is an action for damages for an alleged conspiracy to defraud respondent Sterman of his interests in a certain partnership.

In 1930, Jack Sterman and Roy H. Ziem formed a partnership known as Ziem-Sterman Upholstering Co., and continued as such copartners until September, 1933. At that time the partners made a voluntary assignment of their business and assets to M. J. Flavin, for the benefit of their creditors, which assignment was in the usual form and provided that after the payment of their partnership debts and liabilities, the surplus, if any, should be paid to the partners. The assignment also contained a memorandum that either party had the option of purchasing, within a specified time, the interest of the other for $2,500.

After the assignment to Flavin he paid the current bills, but permitted the former partners to carry on the business as a going concern. During this period Carrie J. Duffy loaned to Flavin the sum of $2,600 to be used as the working capital in the business and received from Flavin his promissory note therefor. Of this $2,600 so loaned, $2,000 belonged to Mrs. Duffy and $600 to a Mrs. Hushman, a relative of appellant Ziem. During the receivership Flavin repaid to Mrs. Duffy $1,000 on her loan and to Mrs. Hushman $300 on her loan. In December, 1933, the creditors decided to liquidate the business and the same was sold to one J. H. Ready. None of the consideration for this sale, however, was paid by Ready. The cash required, some $1400, was advanced by Mrs. Duffy and the balance of the consideration was a cancellation of certain notes, and a waiver of certain salary claims of Mrs. Ziem and Mrs. Sterman for services rendered to the Ziem-Sterman Upholstering Co., and while the bill of sale was from Flavin to Ready it was agreed between Ziem, Duffy and Sterman that Ready was to hold title to the assets so sold for the benefit of Ziem, Sterman and Duffy, and for their security.

It further appears in the evidence that although the business and assets were transferred to Ready, Ziem and

Sterman had the physical possession and continued to carry on the business as they had previously done, without consulting either Mrs. Duffy or Ready in regard to any of the details thereof. Shortly after the bill of sale to Ready had been given, Ziem stated to Ready that Sterman, Duffy and himself were not satisfied with the business standing in the name of Ready, and after a conference between them, Ready, by agreement, transferred the business to Mrs. Duffy, receiving $3,300 therefor from Mrs. Duffy, of which she contributed $3,000 and Mrs. Hushman $300. At the time of the transfer from Ready to Mrs. Duffy she gave to Ziem and Sterman an option to repurchase the business from her for $3,500 with interest thereon from date of agreement until $3,500 was paid to her, and they agreeing to allow her $25 a month from the business. It appeared in the evidence that the difference between the $3,300 paid to Ready and the option for $3,500 represented a bonus which Mrs. Duffy was to receive for advancing the money and that the $25 per month was in lieu of interest on her investment. This arrangement became effective, and Ziem and Sterman continued to operate the business, Ziem in charge of the selling and Sterman in charge of production for about three or four months when Mrs. Duffy gave to Sterman a letter dismissing him from the company, which letter brought about the present action.

During all of the times it is now claimed by appellant that Mrs. Duffy was operating the business, Ziem and Sterman carried on the business, doing the buying, selling and manufacturing of the commodities engaged in and extending credits to their customers and at no time discussed such affairs with Mrs. Duffy. The business at the time of the transfer to Mrs. Duffy had assets of approximately $14,000 and liabilities of about $1200 exclusive of the $3,300 owed Mrs. Duffy. Upon such evidence the court found that Ziem and Sterman were partners.

The foregoing constitutes a summary of the evidence touching the relationship of the parties to the business, and while some of the statements are disputed by appellants we believe the foregoing is in accord with the findings of the court and the evidence in the record which tends to support the judgment and findings.

■ It is the contention of respondent that the transfers from Flavin, the assignee for the creditors, to Ready, and from Ready to Duffy were each for security only and that each of the transferees held the title for the benefit of Ziem and Sterman, and the law and the facts appear to support this contention. It is true that an assignment for the benefit of creditors has the legal effect of dissolving the partnership (*Wells* v. *Ellis,* 68 Cal. 243 [9 Pac. 80]; *Garn* v. *Thorwaldson,* 40 Cal. App. 62 [180 Pac. 9]), and this is not denied by respondent, but he claims that after the transfer to Ready a new partnership came into existence and continued thereafter as was evidenced by the acts and conduct of the parties.

A partnership is defined in section 2400 of the Civil Code as an association of two or more persons to carry on as copartners a business for profit. That a partnership may be created by the agreement or conduct of the parties, either expressed or implied, has often been recognized. (*Stenian* v. *Tashjain,* 178 Cal. 623 [174 Pac. 883]; *Niroad* v. *Farnell,* 11 Cal. App. 767 [106 Pac. 252]; 20 Cal. Jur. 681.)

In *Niroad* v. *Farnell, supra,* the rule is stated in the syllabus which is borne out by the text, "the voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners, and acted as such".

In the case at bar the former partners continued in apparent control and management of the business, and as the court found, the title vesting in Ready and Duffy was for security only. The fact that the conveyances to Ready and to Duffy were absolute upon the face is not material. The rule is stated in 5 California Jurisprudence, page 41:

"The rule is well settled under the code that a chattel mortgage does not transfer title to the mortgaged property, and that the mortgagee has only a lien thereon as security for the payment of this debt. Even though the parties agree to the contrary, yet where the relation of the parties is that of debtor and creditor and the property is regarded as security for the payment of the debt, there is no trans-

fer of title. Nor is the operation of the rule changed by delivery of possession of the mortgaged property to the mortgagee.''

Appellants point out that with the bill of sale from Ready to Duffy was an option from Duffy to Ziem and Sterman, granting them the privilege of purchasing the business. Apparently, however, the trial court considered this entire transaction as a subterfuge to protect Ziem and Sterman from their creditors, and denominated the option as a "working agreement" given as security to the parties thereto, and that Mrs. Duffy held the property in trust for the partners. This seems to find sufficient support in the evidence, the relationship of the parties, the advancement of the money, and the conduct of the business, all of which indicate that the parties were in accord as to the joint interest in the business of Ziem and Sterman.

There is here ample support in the findings and justification in the law for the conclusion of the court that neither possession, title nor ownership of the partnership property was vested in appellant Duffy, and that she held the same for security only, and did not have the ownership or control of the business but held at most the bare legal title for security, with the ownership and control in Ziem and respondent, and therefore she had no right or authority to discharge respondent from the business.

Appellants claim that respondent has no cause of action against appellant Duffy until he has tendered repayment to her of the money advanced; inasmuch, however, as this action is for conversion and is not based upon any breach of contract, and is for a declaration of the rights of respondent and damages for their infringement, no tender need be made. Furthermore, under the contract between the parties the period within which such a tender could be made had not terminated.

Appellants claim that no overt act having been shown, the evidence is insufficient to support the finding of conspiracy to do a wilful and unlawful act. It requires the citation of no authority, however, that a fiduciary relationship exists between members of a partnership and that in the conduct of the business, the partners have equal rights unless limited by contract, and where one partner is deprived of possession of the business through a con-

spiracy between a copartner and a third person, he may sue the partner and the third party for damages on the conspiracy or may sue the third person alone. (20 Cal. Jur. 802; *Moropoulos* v. *Fuller Co.*, 186 Cal. 679 [200 Pac. 601].)

The argument of appellants is based largely upon the conflict in the evidence between the respective parties and the contention that the evidence adduced upon behalf of plaintiff is insufficient to support the findings and judgment of the trial court. It is a well-recognized principle, however, that in examining the sufficiency of the evidence to support a questioned finding we must accept as true all evidence tending to establish the correctness of such finding as made, together with all inferences which might reasonably follow, and every substantial conflict in the evidence must be resolved in favor of the finding. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157].)

We find, therefore, that there is ample evidence to support the findings of the trial court and the judgment should be affirmed. It is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1937.