[Civ. No. 3182. Fourth Dist. Jan. 30, 1946.]

J. N. LAUGHLIN, Appellant, v. GEORGE HABERFELDE et al., Respondents.

Calvin H. Conron, Jr., Conroy & Conroy and Redwine & Redwine for Appellant.

Siemon, Maas & Siemon for Respondents.

BARNARD, P. J.—The plaintiff appeals from a judgment of dismissal after a demurrer was sustained to his third amended complaint, without leave to amend. The record shows that he asked leave to amend.

The complaint alleges that the plaintiff had entered into a contract with the Firestone Tire & Rubber Company under which he was to manufacture for that company 270,200 cast steel blocks weighing eighteen pounds each, for which the company was to pay him 21 cents per pound or a total of $1,021,356, and which contract was reasonably worth $272,362; that he was also the owner of an agreement giving him the right to purchase an electric furnace for $2,000, upon which he had paid $500 and which furnace had a reasonable market value of $7,800; that he also owned an agreement giving him

the right to purchase an overhead crane for $1,500, which crane then had a reasonable market value of $3,500; and that on or about July 9, 1942, he and the defendants obtained the consent of the Firestone Tire & Rubber Company, and the Ordnance Department of the United States Army, that they should enter into a partnership for the purpose of performing the Firestone contract above referred to.

It is then alleged that on or about July 9, 1942, when all of the above described contracts were in full force and effect, plaintiff and defendants entered into an oral copartnership agreement for the purpose of constructing and operating a steel foundry in Bakersfield and for the purpose of performing said Firestone contract as well as manufacturing castings for general sale; that the plaintiff agreed to and did contribute to said copartnership the Firestone contract and the contracts for the purchase of the electric furnace and crane; that the plaintiff further agreed to supervise the construction and operation of the foundry; that the defendants agreed to supply capital not exceeding $150,000 for the purpose of constructing said foundry according to plans supplied to the parties by a named construction engineer; and that the parties further agreed that the capital advanced by the defendants would be first returned to them and thereafter the profits would be divided one-half to the plaintiff and one-half to the defendants.

It is then alleged that a "written memorandum covering said agreement in part" was executed on or about July 9, 1942, reading as follows:

" 'Preliminary Agreement

" 'It is the intention of Ed Haberfelde, George Haberfelde and Clarissa Reavis and J. N. Laughlin to form a partnership to assume the contract made between Laughlin Steel Co. and Firestone Tire & Rubber Co. and proceed immediately to make arrangements to procure buildings to house the operation. The contract shall be assigned to a *fictious* company to be named Haberfeld Laughlin Steel Co., said name to be filed in the manner prescribed by law.

" 'A suitable partnership agreement shall be written by an attorney agreeable to all parties. Ed Haberfelde, George Haberfelde and Clarissa Reavis and J. N. Laughlin shall divide the profits ½ to J. N. Laughlin and half to Ed Haberfelde, George Haberfelde and Clarissa Reavis. No profits to be

paid out until George Haberfelde, Ed Haberfelde and Mrs. Clarissa Reavis have received all of the money advanced after deducting all taxes and all other expenses.

 " 'O.K. Ed Haberfelde
 " 'O.K. George Haberfelde
 " 'O.K. J. N. Laughlin' ''.

It is then alleged that on or about July 9, 1942, the parties entered into the performance of said partnership agreement; that the copartnership acquired the electric furnace and overhead crane; that it secured the consent of the Firestone Tire & Rubber Company, and the Ordnance Department of the United States Army, to the performance of the Firestone contract by the copartnership; that it acquired a lease of certain land and undertook and commenced the construction of a foundry; that on or about August 10, 1942, the defendants conspired each with the other to, and did, convert the entire assets of the partnership to their own use and benefit; that they ejected plaintiff from the premises and prevented him from further supervising the construction and operation of the foundry; that they have since, to the wrongful exclusion of the plaintiff, continued in wrongful operation thereof; and that on or about August 18, 1942, the defendants wrongfully represented to the Firestone Tire & Rubber Company that this copartnership was terminated, that they retained the facilities with which to perform the Firestone contract, that plaintiff had no such facilities and could not perform the same, and that they thereby induced the Firestone Tire & Rubber Company to cancel the Firestone contract and issue to the defendants a contract substantially identical therewith.

It is then alleged that on or about August 17, 1942, the defendants gave the plaintiff written notice that they would not proceed further to carry out the terms of said partnership and since that time they have continued the partnership business for their own use and benefit, have completed and operated the foundry, have used all of the contributions of the plaintiff, have excluded the plaintiff from the business, and have converted the partnership property to their own use without paying anything to the plaintiff; that the reasonable cost of manufacturing the blocks provided for in the Firestone contract was at that time 9.8 cents per pound or a total cost of $476,632; and that the reasonable anticipated net profit from the performance of said contract was $544,724.

It is then alleged that had defendants performed the agreement of partnership and fulfilled the Firestone contract as made with plaintiff he would have realized a profit of approximately $272,362 therefrom, that the plaintiff has been damaged in that amount, and that in addition thereto plaintiff has been damaged $200,000 by being deprived of his interest in said partnership and business.

A second cause of action realleges all of these matters and further alleges that at the time of entering into said partnership agreement the defendants had no intention of performing their promises but made the same solely as a part of a conspiracy to acquire these properties owned by the plaintiff, and thereafter to exclude him from all benefits from them and the partnership.

The third cause of action alleged the existence of a controversy between the parties with respect to the existence and effect of the agreement and arrangement between them.

The prayer was for damages in the sum of $472,362, and for declaratory relief.

A general and special demurrer as to each cause of action was filed. The court sustained the demurrer giving as reasons therefor, with respect to the first and second causes, that no partnership contract was alleged since it was agreed that a formal contract was to be later drawn, that if a partnership did exist the remedy ''would be a dissolution and accounting,'' and that no facts were pleaded from which damages could be ascertained. The demurrer to the third cause of action was sustained on the authority of *Columbia Pictures Corp.* v. *DeToth,* (Cal.App.) 154 P.2d 420 (that case was overruled in the Supreme Court, see same case 26 Cal.2d 753 [161 P.2d 217]).

The first question presented is whether this complaint sufficiently alleges the existence of a partnership agreement between these parties. The respondent contends, and the trial court accepted that view, that there was no such agreement. It is argued that it must be implied that the preliminary contract was drawn up after the oral contract was made, that any oral agreement was merged therein and it constitutes the only agreement between the parties, that it provides for the execution of a later partnership agreement, and that it follows that no partnership was ever launched. It is further argued that in any event the allegations of the complaint are too uncertain in that there is a failure to allege the amount to be contributed,

the size, character or location of buildings to house operations, the size and capacity of equipment, the terms and conditions of the partnership agreement which was to be prepared, what the advances were to cover, whether the appellant was to acquire any interest in the operative properties and equipment, and when the division of profits was to commence. Also, that there are no sufficient allegations of damage, but only allegations as to prospective profits from a new business, with no experience on which such profits could be determined, and that, in any event, damages are asked twice for the same thing.

It has been held, in many cases, that no agreement exists where it appears that the parties intend only to be bound by a later written agreement which is never executed. But where no such an intention appears a different result may obtain. "A contract partly in writing and partly oral is, in legal effect, an oral contract. 'It occurs where an incomplete writing, or one expressing only a part of what is meant, is, by oral words, rounded into the full contract'." (6 Cal.Jur. 227.) The clause in the preliminary agreement here in question providing that "A suitable partnership agreement shall be written by an attorney agreeable to all parties," taken in connection with the previous statement that it is the intention of the parties to form a partnership to carry out the Firestone contract and to proceed immediately to that end, implies not only that there shall be a further writing but that this shall be one embodying the terms of an existing agreement. The intent to form a partnership may be shown by the acts of the parties as well as by direct evidence (*Lyon* v. *MacQuarrie,* 46 Cal.App.2d 119 [115 P.2d 594]). In *Lusher* v. *Silver,* 70 Cal.App.2d 586 [161 P.2d 472], it is said: "In the last analysis the *fact* of partnership depends upon the intention of the parties. To determine this intent not only the words of the agreement itself, but the actions and conduct of the parties may be considered." "Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorandum thereof." (Am. Law Inst. Restatement, Contracts, vol. 1, par. 26.) ". . . the mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that the parties intended that until such formal writing was executed the parol

or informal contract should be without binding force." (122 A.L.R. 1219, 1222.) In *Clarke* v. *Fiedler*, 44 Cal.App.2d 838 [113 P.2d 275], where the parties had entered into an agreement but had agreed that the contract would later be reduced to writing, the court said:

"In all the cases cited by respondent it appears from the facts thereof that the parties therein understood that their agreement was not to become binding upon any of them until evidenced by the written form; and under those circumstances, of course, their understanding does not become a binding agreement until it is reduced to writing and signed by the parties to it. However, where, as in the instant case, the contract is of such a nature that the law does not require it to be in writing, and it is conceded that a contract of partnership may be oral, and where the terms of the contract are definitely agreed upon and complete, then the fact that contemporaneously with the making of their full and complete oral agreement, they decide to evidence the same by a written instrument, the force and effect of the oral agreement is not thereby impaired or interfered with. We believe this rule to be sound and that it should be so held in the present case." In *Sterman* v. *Ziem*, 17 Cal.App.2d 414 [62 P.2d 160] the court said:

"That a partnership may be created by the agreement or conduct of the parties, either expressed or implied, has often been recognized. (*Stenian* v. *Tashjain*, 178 Cal. 623 [174 P. 883]; *Niroad* v. *Farnell*, 11 Cal.App. 767 [106 P. 252]; 20 Cal.Jur. 681.)

"In *Niroad* v. *Farnell*, *supra*, the rule is stated in the syllabus which is borne out by the text, 'the voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners, and acted as such.' "

█ It is here alleged that these parties entered into an oral copartnership agreement for the purpose of operating a foundry and for the purpose of performing the Firestone contract; that the plaintiff agreed to and did contribute to the partnership this Firestone contract with two other contracts; that the defendants agreed to supply capital to construct the foundry according to certain designated plans; that it was agreed that the amount advanced by the defendants should be returned to

them and thereafter the profits divided in a definite manner; and that the parties actually entered into the performance of the partnership agreement in a number of definite respects. While a preliminary agreement was executed by some of the parties which provided for a later more formal agreement, this agreement in itself provided that the parties should proceed immediately to carry out the purpose for which the partnership was formed. Under these circumstances, it can neither be held that the preliminary written agreement must alone be considered nor that it indicates that nothing should be done until a more formal agreement was executed. Under the authorities, including those to which we have referred, we think an existing partnership was sufficiently alleged for the purposes of this action. The uncertainties, to which the respondent refers, are as to matters which are either sufficiently pleaded or which are evidentiary in character. Nor can it be said that damages are not sufficiently alleged. Among other things, it is alleged that a contract for a certain amount of material for a fixed price per pound was wrongfully taken, and that at that time said material could be manufactured at a certain cost per pound. If these facts are true, some damage can be definitely ascertained irrespective of any prospective damage from the operation of a new business. While proof of these facts may be another matter we are not here concerned with that.

 The next question presented is whether, assuming a partnership relation, the only remedy available is through an action for dissolution and accounting. The respondents rely on the general rule that a partner may not sue his copartners in an action at law with respect to firm transactions until an accounting has been had. It is argued, in effect, that any possible claim of the appellant for damages for any breach of the partnership agreement, assuming there was such an agreement, must be raised and considered only in an action for an accounting. They cite such cases as *Rassaert* v. *Mensch*, 17 Cal.App. 637 [120 P. 1072], and *Bremner* v. *Leavitt*, 109 Cal. 130 [41 P. 859], which follow the general rule that damages for wrongful acts in connection with carrying on a partnership business should be sought in connection with an accounting. They also rely on *DeRigne* v. *Hart*, 94 Cal.App. 209 [270 P. 1013], which not only states the general rule "that partners cannot sue one another at law in respect to any of the business of the partnership,"

but adds the statement ''or to recover damages from the one or the other of the copartners for a breach of the partnership agreement.'' The facts are not fully stated in that case and it does not appear that the statement last quoted does not relate, as suggested by the cases cited in support thereof, to the ordinary breach of some duty in connection with the carrying out of the partnership agreement. It does not clearly appear that it was intended to apply this statement to a situation where the breach in question consists of an actual tort outside of and apart from the partnership agreement, and one which results not only in the destruction of the partnership but in the complete conversion of all of its assets.

While the general rule is well established a different rule, or at least an exception to the general rule, has been quite generally recognized and has been indicated and applied in several cases in this state. The general rule is peculiarly applicable to claims for damages arising out of the manner in which a partnership business has been conducted, and to breaches of such agreements as such. The reason for the rule is thus stated in 20 Cal.Jur. at page 759:

''The reason is that until an accounting is had it cannot be known whether the partner suing may not in fact be indebted to the partnership, or that the other members may not also be creditors of the firm, or that there may not be outstanding firm debts entitled to preference over the debt due the partners themselves and sufficient to exhaust the firm assets.''

These reasons are less forceful where the wrongful acts complained of are not only a breach of the contract but constitute a tort, and this is especially true where the tort is of such a nature that it not only terminates the partnership but wrongfully destroys it, and where the erring partner converts to his own use its entire assets. In 58 A.L.R. at page 626, a number of situations are set forth as exceptions to the general rule. Among these exceptions are:

''(7) When the joint property has been wrongfully destroyed or converted.

''(8) When one partner has been guilty of fraud . . . or by other device defeating the rights of the complaining party.''

Section 2432 of the Civil Code, adopted in 1929 as a part of the Uniform Partnership Act, recognizes this distinction

by giving the innocent partner a right to damages in addition to his right to an accounting, and with no express limitation as to the form of the action in which the additional right may be enforced.

In *Crosby* v. *McDermitt*, 7 Cal. 146, a partnership was formed and the plaintiffs furnished $1,000 and the lumber for building a mill. The defendants converted the money and the lumber to their own use and refused to complete the contract. The plaintiffs sued for damages. On appeal, the defendants claimed that one partner could not sue another at law for any wrongful act done in the course of the partnership. The court held that this objection did not apply in such a case, that the wrongful acts of the defendants had dissolved the partnership, and that, in any event, the plaintiffs were entitled to maintain an action for damages under such peculiar circumstances.

In *Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679 [200 P. 601], a partnership was formed for the operation of a dairy on leasehold premises. One partner was ousted by the others and the leasehold premises, which were the basis of the partnership business, were assigned to another. The action was one for damages on the ground that the defendants and the plaintiff's partner had conspired to and had fraudulently appropriated and destroyed the partnership business. A judgment of dismissal, after demurrer sustained, was reversed, the court holding that while the plaintiff might have brought an action for restoration he "also had the right to submit to this wrongful appropriation and conversion of the partnership business and assets by the defendants and his partner Karales, and to bring his action for the damages personally suffered." In *Wilson* v. *Brown*, 96 Cal.App. 140 [273 P. 847], a partnership was formed for the purpose of buying and subdividing land. While the action subsequently brought was for an accounting, among other things, it was contended on appeal that no personal judgment should have been rendered until the partnership had been settled and its assets disposed of. While the court stated that this was the general rule it also stated: "Where, as in this case, some of the partners have excluded another and have appropriated the partnership property to their own use, the latter may treat the matter as a conversion and, without any accounting or disposition of the former partnership assets, sue the offending partners

and recover against them a personal judgment in the amount of his damage.''

In *Johnstone* v. *Morris,* 210 Cal. 580 [292 P. 970], the defendant filed a cross-complaint for fraud in misrepresenting certain facts in buying out his interest in a partnership. The plaintiff contended on appeal that the action was based on a partnership relation, that it was in effect an action in accounting between partners, and that no jury should have been allowed. While the court reaffirmed the general rule that an action at law may not be maintained between partners with respect to partnership transactions, even after dissolution, it recognized and applied the exception that where there is fraud by one partner in selling out to another partner the purchaser may elect to rescind and sue for an accounting in equity or, at his option, may affirm and sue at law for any damage suffered. The court quoted from a West Virginia case where, under similar circumstances, the court said: '' 'The gravamen of the action in this case is the alleged tort—the alleged personal wrong done to one partner by another, as to which there can be no partnership relation. The late partnership is in no way concerned. It cannot be conceived that there is anything in the former partnership relation which prevents the maintenance of this action brought for damages for the alleged deceit.' ''

While the facts in the instant case are somewhat different the basic principles are essentially the same and, under the authorities above cited, it must be held that this case comes within one of the exceptions to the general rule and that the trial court was in error in concluding that this action for damages could not be maintained separate and apart from an action for an accounting. In a very real sense, the acts of which the appellant complains were not acts ''with respect to partnership transactions.'' While the formation of the partnership furnished the opportunity, the acts constituting the tort were entirely outside of and apart from the partnership business.

While, in ruling on the demurrer, the court's attention seems to have been largely directed to the questions as to whether the allegations of the complaint were sufficient to show a partnership and, if they were, whether an action for damages could be maintained, and while this complaint might be improved in certain respects, it does not appear that there is any such uncertainty in its general allegations or with respect to its allegations as to the damage suffered

as would entirely preclude the appellant from any recovery. Insofar as the complaint is concerned, a good cause of action is sufficiently alleged.

It is unnecessary, under the circumstances, to particularly consider the additional allegations of the second and third causes of action. As against the demurrer, sufficient fraud is alleged in the second cause of action and if, as respondents argue, the third cause of action adds nothing to the others no harm is done.

The judgment is reversed, with directions to overrule the demurrer.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 28, 1946.