# No. 17,709.

## CLAUS MUMM *v.* HENRY ADAM.

(307 P. [2d] 797)

Decided February 11, 1957.   Rehearing denied March 18, 1957.

Mr. ERSKINE R. MYER, Mr. W. KEITH PETERSON, Mr. RENDLE MYER, Mr. HARRY E. MAST, Mr. GEORGE S. COS-AND, for plaintiff in error.

Mr. ERVEN T. LARSON, Mr. LAWRENCE THULEMEYER, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE parties were aligned in the trial court as they are here. Plaintiff brought suit to recover on a note and on a check. A favorable verdict in his behalf on these claims is not contested before this court.

Defendant Adam filed his counterclaim, alleging "that defendant and plaintiff were actively engaged in a partnership business known as 'La Junta Livestock Commission Company' from April 1, 1946, until January 17, 1950, that said partners each had a one-half interest in said partnership business." It was further alleged in the counterclaim that, during the existence of the partnership and in the winding up thereof, plaintiff was in full and complete charge of keeping the books of the partnership; that, during the partnership, plaintiff was obligated to furnish defendant with an accounting of all sums received by and paid out on behalf of the partnership; that defendant made numerous demands on plaintiff to furnish defendant with such an accounting, which were refused, except that at the close of each year plaintiff

furnished defendant with partnership income tax returns, at which time defendant was advised that such returns disclosed the extent of his earnings from the partnership; that defendant was not allowed access to the books until after the commencement of this action.

In the concluding paragraph of the counterclaim, it is alleged "that the books kept by said plaintiff do not reflect the true extent of the profits earned by said partnership, in that plaintiff omitted from the said books numerous sales of livestock made by and on behalf of the partnership through the livestock auction sales ring operated by the partnership and, by reason of said omissions of sales in the books kept by the plaintiff, Claus Mumm, understated said sales to the extent of the sum of $100,417.33; that by adding the said numerous sales of livestock omitted to the sales made by said partnership, it results in a profit of $100,417.33 to the partnership, of which sum defendant is entitled to recover half thereon from the plaintiff, Claus Mumm."

The plaintiff, in his answer to the defendant's counterclaim, admitted the existence of the partnership from April 1, 1946, until January 17, 1950, the equal ownership thereof, but otherwise generally denied the allegations of the counterclaim. Trial was held before a jury on the issues thus raised, resulting in a verdict in favor of the defendant on his counterclaim in the sum of $50,175.06. Judgment was entered on the verdict, which plaintiff now seeks to reverse.

Motion for dismissal of the counterclaim at the close of the defendant's evidence and a motion for directed verdict upon completion of all the evidence were made by the plaintiff, and each was denied. The verdict and judgment were entered November 24, 1954. On December 6, 1954, the court enlarged the time in which to file motion for directed verdict and motion for new trial, granting "an additional twenty days beyond that granted under Rule 50, Section B," R.C.P. Colo. On December 18, 1954, plaintiff filed his motion for a directed verdict

and in the alternative for a new trial. It was not asserted in the motion for new trial, as grounds for reversal, that the trial court erred in denying the motion to dismiss at the close of defendant's evidence on the counterclaim, and in denying the motion for directed verdict upon completion of all the evidence on the counterclaim. This motion for directed verdict and in the alternative for a new trial was denied.

The court, in its Instruction No. 1, set forth in detail the issues of the case, and in charging the jury advised that the defendant in his counterclaim alleged "that at all times during the partnership, the plaintiff, Claus Mumm, was in full and complete charge of keeping the books of said partnership; * * * that defendant made demands to the plaintiff to furnish such accounting and the plaintiff refused, except that plaintiff caused partnership income tax returns to be made up at the end of each year's business and advised defendant as to the extent of his earnings." In the same instruction, the court advised the jury, inter alia, that "the plaintiff denies that he was in full and complete charge of keeping the books of the partnership at all times during, and in the winding up, of the partnership affairs;" that the plaintiff denied the matters alleged by the defendant concerning the income tax returns.

Instruction was given on burden of proof in regard to the complaint and the counterclaim. By Instruction No. 6 the trial court advised the jury that if they further found "that Claus Mumm did not keep a complete record of the sales of company livestock and did omit from the record of the sales of company livestock sums in any amount, you shall not find damages for the defendant in any amount, solely because of omission from the record of any company sales, but damages to defendant, if any, shall be such damages as you find defendant actually suffered because of said omissions, which cannot exceed $50,208.66."

No instruction was given on the question of what con-

stituted a dissolution, an accounting, a settlement of accounts, or a winding up of the partnership. Upon the instructions being settled, the following colloquy took place:

"The Court: Does the plaintiff have any record it wishes to make with regard to instructions given or refused? Mr. Mast: No."

The evidence is not in dispute that the partnership operated a livestock sales ring at which it auctioned livestock purchased and owned by the partnership, and livestock of third parties; that, with the exception of seven entries, all entries in the books of the firm were made by plaintiff; that the records and books of the partnership were kept at the place of business of the partnership during the time of its operation; that plaintiff employed a bookkeeping service to make partnership income tax returns based upon the books kept by him; that copies of said income tax returns were furnished to the defendant; and that the sales ring was closed and the business of the partnership terminated on February 17, 1950, and the sales sheets, from which the entries in the books in part were made, were stored in defendant's garage.

From the evidence, the jury could draw the inference that the partnership income tax returns represented periodic accounts between the partners. The evidence is somewhat indecisive on this matter because, as to both plaintiff's and defendant's evidence, there is considerable internal conflict on how these returns were received by the parties. The evidence is not clear on whether a dissolution had been effected and a settlement of the accounts made. Inferences of an affirmative or negative character could have been drawn by the jury from the evidence submitted relating to dissolution and settlement of accounts.

It is the contention of the plaintiff that the counterclaim, and the evidence presented in support thereof "relate solely to an action at law upon claims arising out

of transactions between partners inter sese in the absence of a final accounting between them or dissolution of their partnership relation. Thus, in view of the universal rule that an action at law by one partner against his copartner will not lie in such a situation, this court is called upon to determine whether or not the trial court committed reversible error by overruling the motion of plaintiff for dismissal, filed at the close of the defendant's case, and by overruling the motion of plaintiff for a directed verdict in his favor, filed at the close of all evidence." He further contends that "the trial judge committed prejudicial error by the admission in evidence of the partnership returns of income for the years 1948, 1949 and 1950, over the objection of the plaintiff." Lastly, he asks this court to "determine from the evidence adduced whether or not the defendant sustained his burden of proof good against the motion for dismissal, and the motion for a directed verdict, and whether or not the evidence was sufficient as a matter of law to entitle the defendant to a recovery in any amount or sufficient to support the verdict rendered."

In the "Conclusion of the Argument," contained in his brief, the plaintiff says:

"We call particular attention to the discretionary power of the Court to notice any error appearing of record — Rule III (f) Colorado Rules of Civil Procedure — even though the plaintiff in the lower court failed to make appropriate objections and exceptions thereto. In this connection we wish to state that the counter-claim, in our opinion, does not state a cause of action, and for said reason the same was subject to dismissal; even though no such motion was made at the trial. The record does not disclose the request of the defendant for a jury trial, nor does there appear to be any objections thereto filed by the plaintiff. Again, in our opinion, such objection if filed should have been sustained. The record is silent respecting any objections to the trial court's instructions, but as we have shown,

the instruction given, was not only inadequate, and unintelligible, but was contrary to law."

The motion for a directed verdict after verdict was not filed within the time permitted by Rule 50 (b) R.C.P. Colo. "Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . ." And the order for enlargement of the time within which the motion could be filed was abortive in view of the specific provisions of Rule 6 (b), R.C.P., prohibiting such enlargement. *Ross et al. v. Arrow Manufacturing Co.,* decided this date. 134 Colo. 530.

Nor can reversal be had on the ground that the trial court erred in denying plaintiff's motion for directed verdict at the conclusion of all the evidence. Specification of such as error as a ground for new trial was not made. And the assertion of insufficiency of evidence in the motion for new trial does not save the question for consideration by this court. *Howard v. American Law Book Co.,* 121 Colo. 5, 212 P. (2d) 1006.

Although plaintiff's contentions in connection with the trial court's rulings on his motions to dismiss and for direction of verdict could be resolved by application of the law as above enunciated, nevertheless, we point out that there is considerable authority for the view that upon the discovery by a partner, after the partnership has been dissolved, *or its business concluded,* or its affairs have been settled, that specific assets were concealed from him, or were overlooked, or were misappropriated by a copartner, he may maintain an action at law to secure his share of such assets or their value without resorting to equity. *Morris v. Redak,* 124 Colo. 27, 234 P. (2d) 908; *Heiselt v. Brown,* 108 Colo. 562, 120 P. (2d) 644, 168 A.L.R. 1081; *Wright v. Lake,* 178 Ark. 1184, 13 S.W. (2d) 826; *Johnstone v. Morris,* 210 Cal. 580, 292 Pac. 970; *Laughlin v. Heberfelde,* 72 Cal. App.

(2d) 780, 165 P. (2d) 544; *Erret v. Pritchard,* 121 Iowa 496, 96 N.W. 963; *Crockett v. Burleson,* 60 W. Va. 252, 54 S.E. 341, 6 L.R.A. N.S. 263; *In re Hay,* 56 Eng. Rep. 988 (6 Madd).

Application of the rule applied in these cases is appropriate to this case. There was competent evidence that a number of sales of partnership livestock, appearing from sales sheets of the partnership, were not entered in the books of the company by the plaintiff, and hence were not accounted for in the income tax returns. These totaled $100,350.13, one-half of which the jury awarded to defendant.

In the course of the trial plaintiff contended that an accounting was a condition precedent to the establishment of any liability against him; and that defendant's counterclaim, and the evidence in support thereof, were vulnerable by reason thereof. It was asserted by plaintiff that the court must first ascertain the costs and other expenses incident to the acquisition and sale of the livestock not recorded by plaintiff in the books of the partnership before liability could be determined; in other words, that until such costs and expenses are offset against the sales, the partnership affairs remained unsettled.

The answer to this contention is that the plaintiff did not seek an accounting by way of defense; he merely answered to the merits — he pitched his defense on a denial of the counterclaim. See *Lulich v. Mihaljevich,* 15 La. App. 417, 132 So. 295; *Boyle v. Smith,* (D.C.), 64 Atl. (2d) 428.

On the question of the admission of the income tax returns for the years 1948, 1949 and 1950, it is interesting to note what discussion was had between the court and counsel for the plaintiff after objection was made to their admission. Counsel for the plaintiff told the court that the only objection he could see to their admission was that "they might be used for the confusion of the jury," since they do not prove anything that the de-

fendant was obliged to prove in the case, and then went on to say: "But, the figures and the reports have nothing to do with proof of 'omitted sales' through that livestock ring. That is what they are complaining about. I don't know what the nature of the proof is, if this is it here, how would you reach a figure except by taking the total reported in these books and taking the total reported on those slips, and getting the difference between the two. I don't know how they are going to do that.

"The Court: For that reason it doesn't strike me that they are irrelevant, if those books are relevant, and they are already in evidence. I believe the jury is entitled to the summary of the books, that they know what the total figure is in the books. The books are already in evidence.

"Mr. Mast: Yes sir.

"The Court: And unless there is some particular way in which the get-up of these statements is prejudicial, it would amount to giving somebody an inaccurate picture, why, it seems to me the jury should have the benefit of the expert work that Mr. Chase has done, by giving the total figures.

"Mr. Mast: Of course, Your Honor, the exhibits 10 and 14, being the original records, are the best evidence. These income tax returns are only secondary."

■ We believe the trial court properly admitted the income tax returns as exhibits in the case. They summarized the entries in the books of the partnership, and were claimed by defendant to be the only information furnished him by plaintiff during the existence of the partnership, and would aid the jury in ascertaining the difference between the total of sales reported in the books and the total of sales revealed by all the sales sheets. Moreover, the inferences that could be drawn from the evidence that the parties recognized them as periodic accoutings, and the fact that they were received and retained by defendant without objection or dispute for a considerable period of time were circumstances

from which the jury could deduce an assent that they represented settled accounts between the parties. "True assent may be implied from the circumstances and acts of the parties, but it must appear in some form." *Shaw v. Lobe,* 58 Wash. 219, 108 Pac. 450, 29 L.R.A.N.S. 333. See *Freas v. Truitt,* 2 Colo. 489; *Bowser v. Union Bag Co.,* 112 Colo. 373, 149 P. (2d) 800.

The judgment is affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE HALL did not participate.