Lon L. LAYMON and Winifred
Laymon, Plaintiffs,

v.

Charles H. McCOMB, Mary Ellen
McComb, Harold McComb and Mable
Marie McComb, Defendants.

Civ. A. No. 79-K-460.

United States District Court,
D. Colorado.

Oct. 19, 1981.

Kenneth R. Bennington, Brownstein, Hyatt, Farber & Madden, Denver, Colo., for plaintiffs.

Cassandra G. Sasso, Sherman & Howard, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action under § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, for damages to the plaintiffs due to the defendants' alleged fraudulent conduct regarding grazing rights in connection with the sale or purchase of securities. The plaintiff also includes claims for aiding and abetting and conspiracy to violate the securities laws and state law claims for common law fraud, breach of fiduciary duties, conversion, unjust enrichment and breach of contract. Jurisdiction is founded on 15 U.S.C. § 78aa, and on pendent jurisdiction over the state law claims. Jurisdiction is also proper under 28 U.S.C. § 1332, as diversity of citizenship exists between the parties and the amount in controversy, exclusive of interest and costs, exceeds $10,000.

This case is before the court on the defendants' motion for summary judgment on all of the plaintiffs' claims and on the plaintiffs' cross motion for partial summary judgment on their unjust enrichment claim. For the following reasons, I find that there are genuine issues of fact on all of these claims and therefore, deny both motions in their entireties.

In October of 1972, the Laymons and the McCombs agreed to conduct a livestock operation raising sheep and cattle in southwest Colorado. The parties considered the operation a partnership with themselves as general partners under the laws of Colorado. In connection with the agreement, the McCombs agreed to form a Colorado corporation through which the proposed livestock operation would be owned and operated. The McCombs further agreed to issue to the Laymons 50% of the stock of the corporation, which would be named the "McLay Cattle Company, Inc."

The parties agreed that the Laymons, who live in California, would provide the capital for investment and operating expenses of the proposed operation while the McCombs, who live in Colorado, would oper-

ate and manage it. Under the arrangement, the Laymons provided operating capital in loans to the company. The McCombs were compensated for management of the company by a monthly fee drawn from the company's funds.

In September 1973, the parties purchased deeded land, known as the "Cline property," together with government grazing rights which were available with the land. The parties purchased the Cline property and grazing rights in the name of Charles McComb and Lon Laymon doing business as the McLay Cattle Company, since the corporation had not yet been formed. The Laymons supplied the entire purchase price for these properties.

The grazing rights purchased along with the Cline property were leased from the Bureau of Land Management ("BLM") of the United States Department of Interior, and consisted of 1,553 animal unit months ("AUM's") of BLM grazing rights on approximately 15,000 acres of government land on the Cahone Mesa in Colorado. (Hereinafter referred to as the "Cahone AUM's".) The eventual disposition of the Cahone AUM's is the subject of this controversy.

BLM range management regulations, 43 C.F.R. § 4110.0–2, et seq., require that a holder of grazing rights, such as the Cahone AUM's, demonstrate that it owns or controls "base property," which is private property on which livestock may be kept. That base property must be commensurate with the government property to which the grazing rights apply in terms of its ability to support livestock during the times of the year when livestock must be off BLM land in order to promote regrowth of the natural forage. Accordingly, BLM ties grazing rights to specific base property. When the base property is transferred, the tied grazing rights are transferred with it. However, grazing rights can be transferred by themselves. In that situation, the new holder of the grazing rights must demon-

strate that it owns or controls commensurate base property. 43 C.F.R. § 4115.22.

On September 13, 1973, Charles McComb applied to the BLM to transfer the Cahone AUM's to his name and to his wife's name, Mary Ellen McComb, as individuals. On Charles McComb's instructions, the BLM registered the Cahone AUM's as being attached to base property which McComb had leased from his parents, Harold and Mable Marie McComb.[1]

In November of 1974, the parties finally filed articles of incorporation for the McLay Cattle Company, Inc., with the Colorado secretary of state. However, as a result of growing disagreements over the operations of the company, the parties agreed to dissolve the McLay Cattle Company and the McLay Cattle Company, Inc., in January of 1975.

From 1973 to January 1975, the Laymons had invested $330,000 in the company, including $51,000 which the Laymons paid to satisfy the remaining indebtedness on ranch property which the McCombs owned. (Referred to by the parties as the "Negro Canyon property".)

Pursuant to the dissolution agreement, entered into by the parties in January of 1975, the McCombs agreed to purchase the company's assets from the Laymons and to execute promissory notes for $250,000. The assets listed in the dissolution agreement included, among other things, the Negro Canyon property, the Cline property and the grazing rights in the BLM permit which contained 2,449 AUM's including AUM's tied to the Negro Canyon and Cline properties. The McCombs agreed to secure the Laymons' promissory notes through a security interest in, among other things, the Cline and Negro Canyon properties and associated grazing rights. However, the parties now disagree on whether the Cahone AUM's, originally purchased along with the Cline property and subsequently transferred to the McCombs' base property, were intended to be included in this security agreement.

1. Harold and Mable Marie McComb's actions, in providing the land for the transfer of the Cahone AUM's, are the subject of the plaintiffs' second and third claims for aiding and abetting and conspiracy to violate the federal securities laws.

In 1977, the McCombs defaulted on the promissory notes and the Laymons foreclosed. The Laymons subsequently received a deed to the Cline and Negro Canyon properties and then applied to the BLM for a transfer of the AUM's. The BLM transferred the AUM's tied to the Negro Canyon property to the Laymons but it refused to transfer the Cahone AUM's because they were tied to the McCombs' property and not the Cline property. After the McCombs refused to sign a transfer application for these AUM's, the Laymons instituted this action in April of 1979.

The defendants claim that they are entitled to summary judgment since the plaintiffs' securities fraud, common law fraud and breach of fiduciary duty claims are barred by the statute of limitations. The defendants also assert that the plaintiffs waived their claims for breach of fiduciary duties, conversion, unjust enrichment and breach of contract, and that the conversion cause of action fails to state an adequate claim. The plaintiffs claim that the evidentiary materials presented establish the elements of their unjust enrichment cause of action and they move for partial summary judgment on that claim.

■ However, summary judgment, pursuant to Fed.R.Civ.Pro. 56, is a drastic remedy, *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir. 1973), by which movants are given the opportunity to pierce the allegations in the pleadings. The "power to pierce the flimsy transparent factual veil should be temperately and cautiously used lest abuse reap nullification." *Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 571 (10th Cir. 1946). Summary judgment is appropriate only where there exists no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir. 1980). As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir. 1980).

■ In order to determine the propriety of summary judgment I must construe all pleadings, affidavits, and depositions liberally in favor of the party against whom the motion is made. *Id.; Accord, Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); *Commercial Iron & Metal Co. v. Bache & Co.*, 478 F.2d 39 (10th Cir. 1973). Summary judgment is not a substitute trial by affidavit. *Ando v. Great Western Sugar Co.*, 475 F.2d 531 (10th Cir. 1973). Under the rule, no margin exists for disposition of factual issues, and it does not serve as a substitute trial of the case nor require the parties to dispose of the litigation through affidavits. *Commercial Iron & Metal Co. v. Bache & Co., supra* at 41. Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir. 1980).

Taking these considerations into account, I deny both of the motions.

■ First, the defendants allege that the plaintiffs' federal securities fraud and common law fraud claims are barred by the statute of limitations. The defendants correctly note that the three year statute of limitations applicable to common law fraud claims, C.R.S. §§ 13–80–108, 13–80–109 (1973), also applies to actions brought under § 10(b) of the federal securities exchange act since there is no federal statute of limitations on these actions. *Aldrich v. McCulloch Properties Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980), *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1225 (10th Cir. 1970). While it is an open question whether state or federal tolling rules apply, *see Aldrich v. McCulloch Properties, Inc., supra* at *id.*, under both Colorado and federal law, the limitations period begins to run when the aggrieved party discovers or should have discovered, by the exercise of reasonable diligence, the facts constituting the fraud. *Id.*

■ The question of whether a plaintiff should have reasonably discovered the basis of a fraud action does not easily lend itself

to summary disposition. The defendants claim that by January, 1975, when the company and corporation dissolved, the plaintiffs knew all of the facts upon which they base their fraud claims. The defendants cite plaintiff Lon Laymon's deposition testimony that he knew in 1975 that there would be no transfer of the Cahone AUM's to the corporation and no further efforts to register these AUM's as tied to base property owned or controlled by the company or corporation. (Lon Laymon Depo. 1/10/80, pp. 68–70.) However, Laymon also stated that in 1975, he believed that the Cahone AUM's were tied to the Cline and Negro Canyon properties and not the McCombs' family property (Laymon Depo. at 79–80), and he therefore did not discover the truth until foreclosure in April 1977. (Laymon Depo. at 119–121.) Thus, according to this latter portion of Laymon's deposition testimony, the action was properly filed within the limitations period in April 1979.

The plaintiffs also claim that they could not have discovered the alleged fraudulent transfer of the Cahone AUM's in 1975 because as late as that date, the defendants misrepresented the property to which these AUM's were tied. The plaintiffs cite the 1975 dissolution agreement which listed as company assets, 2,449 AUM's including AUM's tied to the Negro Canyon and Cline properties. The plaintiff also cites the defendant Charles McComb's deposition testimony that the statement in the dissolution agreement regarding the AUM's was not entirely true. (Charles McComb Dep. 8/15/79 p. 52.)

Since there is conflicting evidence on when the alleged fraud was or should have been discovered, I find that there is a genuine issue of fact and therefore deny the motion for summary judgment on this issue.

 The defendants also claim that the plaintiffs' breach of fiduciary duties claim is barred by the three year fraud statute of limitations. Assuming, *arguendo*, that the fraud statute of limitations is applicable to actions for breach of fiduciary duties, summary judgment would be inappropriate since the same facts underlying the fraud claims also underlie the breach of fiduciary duties claim. The plaintiffs claim that the defendants breached a fiduciary duty owed by parties in a confidential relationship such as partners, *Page v. Clark*, 197 Colo. 306, 315, 592 P.2d 792, 798 (1979), by fraudulently transferring the Cahone AUM's which were partnership property. There is a genuine issue of fact whether the plaintiffs discovered this alleged fraudulent transfer in 1977 within the limitation period or in 1975.

Moreover, the Colorado Supreme Court has held that the five year statute of limitations, C.R.S. § 13–80–114, is applicable to actions involving breaches of fiduciary duties. *Hall v. Swan*, 117 Colo. 349, 357, 188 P.2d 437, 441 (1947); *Morgan v. King*, 27 Colo. 539, 558–59, 63 P. 416, 422 (1900). There is no question that the plaintiffs brought this action within this five year period.

 The defendants also claim that the plaintiffs waived their claims for breach of fiduciary duties, unjust enrichment, conversion and breach of contract. A waiver is a "voluntary abandonment or surrender, by a capable person, of a right known to him to exist, with intent that such right be surrendered and such person forever deprived of its benefit." *Moulden v. Kansas City Life Insurance Co.*, 139 F.Supp. 904, 906 (D.Colo.1955), *aff'd* 232 F.2d 706 (10th Cir. 1956), *cert. denied*, 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956); *Transamerica Corp. v. Merrion*, 127 Colo. 100, 255 P.2d 391, 396 (1953). However, full knowledge of the right waived and the facts on which the waiver is based is an essential element of a waiver. 31 C.J.S. § 70, p. 426, *see Obodov v. Foster*, 105 Colo. 254, 97 P.2d 426, 428 (1937). In the instant case, there is a genuine issue of fact whether the plaintiffs knew of their rights and the facts underlying their claims. Therefore, the motion for summary judgment on the waiver issues is denied.

The defendants claim that the plaintiffs waived their breach of fiduciary duties claim because they knew in 1975 that the

AUM's "would be in" the McCombs' names and that pursuant to security agreement, the McCombs would own the AUM's if they paid off their obligations to the Laymons. However, the plaintiffs claim that they did not know that the McCombs had previously transferred the AUM's to their own base property, thereby ensuring that the McCombs would receive the AUM's even if they defaulted on the security agreement. Accordingly, there is a genuine issue of fact whether the Laymons knew of the alleged breach of fiduciary duties when they supposedly waived this right in 1975.

Similarly, the defendants claim that the plaintiffs waived their conversion, unjust enrichment and breach of contract claims when they foreclosed on the security and bid in full at the foreclosure sale. However, there is a genuine issue of fact whether the plaintiffs knew or should have known that the AUM's were not included in the security agreement. Accordingly, the plaintiffs cannot be deemed to have abandoned voluntarily their claims to the AUM's by foreclosure.

Further, as previously mentioned, there is a genuine issue of fact whether the defendants misrepresented the security agreement as including the Cahone AUM's. Under the doctrine of equitable estoppel, the defendants' misrepresentations would preclude their right to assert waiver as a defense to any of these claims. *See General Acc. Fire & Life Corp. v. Mitchell*, 128 Colo. 11, 259 P.2d 862, 868 (1953), 31 C.J.S. § 59.

The defendants also assert that the plaintiffs do not state an adequate claim for conversion. The defendants note that conversion requires an unauthorized act of dominion or ownership by one person over the personal property of another, *Byron v. York Ins. Co.*, 133 Colo. 418, 296 P.2d 742, 745 (1956), and that the aggrieved party must have had a general or specific property interest in the personalty converted, coupled with possession or the immediate right to possess. *Id.* at 746. The defendants claim that the plaintiffs cannot maintain an action for conversion because they never had title, possession nor the immediate right to possess the Cahone AUM's.

However, when the parties purchased the Cahone AUM's, they purchased them in the name of the McLay Cattle Company as a partnership asset. Accordingly, the plaintiffs originally had a joint right to possess and own these assets. Where one partner does not discover the wrongful conversion of partnership property by another partner until after dissolution, the aggrieved partner can maintain an action at law against his co-partner for fraudulent conversion of partnership property. 58 A.L.R. 633, *see Mumm v. Adam*, 134 Colo. 493, 307 P.2d 797, 800 (1957), 50 Am.Jur.2d § 365. Therefore, summary judgment on the plaintiffs' conversion claim is improper.

Finally, the plaintiffs cross move for partial summary judgment on their unjust enrichment claim on the ground that the evidence uncontrovertibly establishes the elements of this cause of action. The elements of an unjust enrichment cause of action are: "(1) a benefit conferred on the defendant by the plaintiff; (2) acceptance of the benefit by the defendant; and (3) circumstances which make it inequitable for the defendant to retain the benefit." *Cargill Inc. v. Stafford*, 553 F.2d 1222, 1224 (10th Cir. 1977), *Dass v. Epplen*, 162 Colo. 60, 424 P.2d 779, 780 (1967).

There is little question that the plaintiffs conferred a benefit on the defendants which the defendants accepted and retained. The defendants admit in their answer and stipulate in the pretrial order that the plaintiffs entirely paid for the Cahone AUM's. Further, the defendants accepted and retained the benefits of these AUM's by transferring them to their own base property. The defendants claim that no benefit was conferred on them through the AUM's since the defendants were not otherwise sufficiently compensated for their expertise, management and work in the company for the two years that the partnership existed. The defendants also claim that they are entitled to the AUM's because they paid $90,000 on their debt

before defaulting on the security agreement.

However, these arguments do not go to whether the defendants received a benefit but rather to whether the retention of that benefit was inequitable, given their alleged undercompensated work and payment of $90,000. I find that these arguments raise a genuine issue of fact on the third element of the plaintiffs' unjust enrichment cause of action and I therefore, deny the plaintiffs' motion for partial summary judgment on that claim.[2]

For the reasons expressed it is

ORDERED that the defendants' motion for summary judgment and the plaintiffs' motion for partial summary judgment are denied.

---

2. There is also a genuine issue of fact whether the security agreement, which was designed to satisfy the obligations between the parties, was specifically intended to exclude the Cahone AUM's as security. There is no explicit reference to these AUM's in the agreement. If the plaintiffs intended to exclude these assets, it would not be inequitable for the defendants to retain them.